THE STATE, EX REL. GABALAC, APPELLEE, *v.* FIRESTONE BANK, APPELLANT.

(No. 7767—Decided October 15, 1975.)

*Mr. Stephan Gabalac,* county prosecutor, and *Mr. William Schultz,* for appellee.

*Mr. Edward G. Kemp,* for appellant.

HUNSICKER, J. This is an appeal from a judgment rendered in favor of Summit County, Ohio, against the Firestone Bank for the sum of $10,000 and costs. The Firestone Bank was a depository for the Summit County clerk of courts alimony and support account. Check 105049 was issued through that account, on December 18, 1972, in the amount of $45. This check was mailed by the clerk of courts to the person authorized to receive it, Leona C. Brechbill, who placed it for deposit with Arlington Trust Co. of Arlington, Virginia. The Arlington Trust Co. im-

properly encoded this check to read $10,045. This amount was later paid to Mrs. Brechbill.

After encoding the check so that it could be read mechanically instead of by personal examination, The Arlington Trust Co. sent the check for collection to The Riggs National Bank of Washington, D. C., which in turn sent the check to the Federal Reserve Bank of Cleveland. The Federal Reserve Bank sent it to The Firestone Bank for collection or processed it through that bank's account with the Federal Reserve Bank.

On December 29, 1972, The Firestone Bank paid the check by deducting from the alimony and support account the sum of $10,045. This paid check, along with others, was sent to the Summit County clerk on or about January 5, 1973. No examination of the cancelled checks was made by that clerk or his assistants.

An audit of the office of the Summit County clerk was made by the state auditor as required by law. That audit, covering a period from June 1, 1970, through December 31, 1972, reported, on or about August 22, 1973, to The Firestone Bank that check 105049, in the amount of $45, had been paid by The Firestone Bank and charged to the account of the Summit County clerk of courts in the amount of $10,045.

A Firestone Bank officer testified that no checks passing through the clearing process are processed by personal examination. The volume of check writing in modern business requires mechanical examination by means of the modern magnetic tape code system. That system was used in the instant case.

The Firestone Bank also said that the clerk was negligent in failing to examine the cancelled checks herein, which along with others was personally delivered to the clerk's office on or about January 5, 1973, seven and one-half months before notice of the improper payment from the account. This bank statement which was hand delivered contained a printed sentence which stated: ''Please examine at once. If no error is reported within 10 days, the account will be considered correct and the checks genuine.''

The trial court entered judgment for the plaintiff prosecutor, the appellee herein, who, under the law, was re-

quired to prosecute the case on behalf of Summit County.

The defendant Firestone Bank says that the trial court erred in the following respects:

"1. * * * [I]n its finding that there was no obligation on the part of plaintiff-appellee to, under the circumstances, exercise reasonable care and promptness to examine its regular monthly statement issued by the bank and to notify the defendant-appellant bank promptly after discovering the erroneous overcharge.

"2. * * * [I]n its finding that defendant-appellant failed to exercise ordinary care in processing the check which is the subject of this lawsuit, such conclusion being wholly unsupported by and contrary to the evidence.

"3. The decision of the trial court in favor of plaintiff-appellee and against defendant-appellant is not supported by the record and is contrary to law."

Is there a common law duty on the part of a bank customer to examine his monthly bank reconcilement within ten days and report any errors within that period of time to the bank in order to recover for negligence of the bank in making an unauthorized payment out of the customer's account? It is obvious from reading R. C. 1304.29, that there is no statutory provision, under the facts of this case, which would permit the bank to disclaim liability. The statute talks of: alterations on any item, unauthorized signature, and unauthorized endorsement. The time frame set by the legislature to discover and report these errors is one year and three years, a time longer than the seven and one-half months used by Summit County to notify the bank and much, much longer than the ten days which the bank unilaterally gives its customers to examine the statement for errors.

What happens if the customer is out of town, on a trip overseas, on a cruise, or on an automobile vacation around the United States for more than the ten day bank reconcilement date?

We believe there is a common law duty which devolves upon the customer to examine his bank statement. What the time frame is within which this shall be done, in order

to absolve the bank from responsibility for negligence in the handling of the account, is a question of fact that depends on the circumstances which surround each case.

It should be noted here that the day Leona Brechbill secured the $10,045 after a deposit of the check of the clerk of courts in the Arlington Trust Co. is not shown by the evidence. What is shown on the check as an exhibit is the date the check was deposited to the account of Leona Brechbill, to-wit: December 27, 1972. That was the day when the Arlington Trust Co. sent the check through the bank's clearing department to one of its correspondent banks. The check arrived at The Firestone Bank on December 29, 1972.

Two Ohio cases have been brought to our attention but they treat of situations covered by the statutes and a company resolution covering reconcilement. In *White Castle System, Inc.* v. *Huntington National Bank*, 36 Ohio Law Abs. 253, the court said, at page 258:

"The law is also equally well recognized that where it is the custom of the bank and known to the customer as in the instant case, for the bank to send out statements at certain intervals, it is the duty of the customer to examine such statements and reconcile the same with their own books, and if there is a variance, report the error within a reasonable time. * * *"

The rule there announced was followed in *Portsmouth Clay Products Co.* v. *National Bank of Portsmouth*, 78 Ohio App. 271.

The loss in the instant case was not due to the negligence of the clerk of courts, for even though he would have discovered the check on January 5, 1973, when checks were delivered to him by The Firestone Bank, the loss had already taken place.

Nothing has been shown in this record that an earlier notice to The Firestone Bank would have prevented the loss of the money herein or would even have reduced the loss. Nothing the clerk of courts would have done after an examination of the checks and the discovery of the over payment to Leona Brechbill would have prevented the several

banks in the chain of the clearing process from paying $10,045 to the holder of the check in issue herein after Arlington Trust Co. erroneously encoded it.

If the clerk of courts had notified The Firestone Bank in the ten days, which they say is a reasonable time, that notice would still require the bank to reimburse the clerk for the wrongful payment. In *Faber* v. *Edgewater National Bank*, 101 N. J. Super. 354, 359, 244 A. 2d 339, 342, the court said, in a case involving the payment of a forged check: "* * * a negligent bank cannot put the loss resulting from a forgery *or the like* onto the customer on the ground the customer also has been negligent." (Emphasis ours.) New Jersey has a statute that requires due diligence in the examination of cancelled checks and due diligence in notifying the bank of any error or irregularities. The Ohio statutes do not extend as far as the New Jersey law. We do say that an unreasonable delay in notifying the bank that an error has occurred which causes a loss to the bank is such negligence on the part of the customer as may result in no recovery being allowed such customer. See also, *American Sash & Door Co.* v. *Commerce Trust Co.*, 25 S. W. 2d 545 (aff'd. 56 S. W. 2d 1034) and *Jordan Marsh Co.* v. *National Shawmut Bank*, 201 Mass. 397, 87 N. E. 740.

There is no showing here that the notice delay caused a loss greater than this bank had sustained when it paid the improperly encoded check. In addition, the statute with reference to forged or altered checks, R. C. 1304.29, states that a year is a proper period in which to notify the bank for forged or altered checks thus, in effect, establishing that length of time deemed to be reasonable under the circumstances of the instant case.

We have examined all assignments of error and for the reasons set out herein, we reject assigned errors one, two and three. The judgment of the trial court is affirmed.

*Judgment affirmed.*

Victor, P. J., and Mahoney, J., concur.

Hunsicker, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.