No. 50,512

CITIZENS STATE BANK, *Appellant,* v. JOHN R. MARTIN, *et al.,*
*Appellees.*

(609 P.2d 670)

Opinion filed April 5, 1980.

*Nathan C. Harbur,* of Breyfogle, Gardner, Davis & Kreamer, of Olathe, argued the cause and was on the brief for appellant Citizens State Bank.

*Frederick B. Farmer,* of Lowe, Terry & Roberts, of Olathe, argued the cause and was on the brief for appellee Deluxe Check Printers, Inc.; *Max O. Bagby,* of Bagby, Benjamin & Arnold, of Kansas City, Missouri, argued the cause, and *David K. Martin,* of Payne & Jones, Chartered, of Olathe, was with him on the brief for appellee Leawood National Bank; and *Lewis A. Heaven, Jr.,* of Shawnee, argued the cause, and *Roy S. Bennett, Jr.,* of the same firm, was with him on the brief for appellee The Shawnee State Bank.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the plaintiff, Citizens State Bank of Shawnee, Kansas, from an order of the Johnson County District Court granting summary judgment to three defendants, Shawnee State Bank, Leawood National Bank, and Deluxe Check

Printers, Inc. The parties will be referred to as Citizens, Shawnee, Leawood, and Deluxe, respectively. Citizens is seeking to recover $41,000 which it lost as a result of an insufficient funds check written by John R. Martin. The printed check form which Martin used had an erroneous magnetic bank routing number on it; this caused delay in the collection process.

Issues raised include whether the trial court properly interpreted and applied the bank clearinghouse rules; whether criminal acts were an intervening and thus direct cause of the loss; and whether summary judgment was appropriate. A statement of the facts is necessary to an understanding of the issues.

Modern bank checks have printed thereon the routing number of the bank on which they are drawn. These numbers are magnetically encoded. The bank routing number facilitates the high speed, automated handling of large numbers of checks each day by clearinghouses, so that the checks may be machine processed and routed expeditiously to the bank on which each is drawn. An error in the printed magnetic bank routing number will cause a check to be sent to the wrong bank, thus delaying the clearing process.

John R. Martin opened an account in the Shawnee State Bank in May, 1974. Checks for the account were printed by Deluxe; these included Check No. 140, which is the subject of this suit. Martin discovered that these checks did not clear promptly because of an error in the bank routing number. Deluxe had printed 0138, Leawood National's number, instead of 1038, Shawnee State's number, on Martin's checks. Martin called this to the attention of Shawnee; new checks for Martin were ordered from Deluxe. These, encoded with the correct number, were printed and mailed to Martin on June 4, 1974. Deluxe also sent Martin a form letter which asked him to destroy the earlier checks. He destroyed some of them, but retained several—including Check No. 140.

After June 5, 1974, when Martin presumably received the new checks, he wrote eight checks on the Shawnee account, using the "old" checks encoded with Leawood's bank routing number. The numbers, dates, and amounts of these checks are as follows:

| | | |
|---|---|---|
| Check #106 | October 10, 1974 | $12,000.00 |
| Check #107 | October 25, 1974 | 12,000.00 |
| Check #108 | November 7, 1974 | 74,253.00 |

| | | |
|---|---|---|
| Check #113 | December 26, 1974 | 1,000.00 |
| Check #129 | October 9, 1974 | 97,200.00 |
| Check #131 | July 14, 1975 | 2,400.00 |
| Check #138 | January 3, 1977 | 5,000.00 |
| Check #140 | January 12, 1977 | 41,000.00 |

All except Check No. 140 were honored; funds were on deposit in the Shawnee account when the first seven checks reached Shawnee for payment.

The history and clearing sequence of Check No. 140 and the chronology of events are as follows: Martin wrote the check on Wednesday, January 12, 1977, and deposited it on that date to his company account, Martin Construction and Realty Company, at Citizens State Bank. Citizens sent the check to the Greater Kansas City Clearing House. Because of the erroneous bank routing number, the clearinghouse sent the check to Leawood on Thursday, January 13. Leawood returned the check to the clearinghouse where it arrived on Monday, January 17. It was cleared as a low speed (manual) item to Shawnee. On Tuesday, January 18, Shawnee attempted to give telephone notice of dishonor; calls were made to the First National Bank of Kansas City, Missouri (which had handled the item during the clearing process) and to Leawood, but no call was made to Citizens because its endorsement on the check was not legible. Also on January 18, Shawnee dishonored the check and returned it to the clearinghouse because of insufficient funds in the account on which it was drawn.

Meanwhile, also on Tuesday, January 18, Citizens honored a check written by Martin on the Martin Construction and Realty account in the amount of $41,000; this depleted the Martin Construction account, leaving a balance of $37.59. The clearinghouse, upon receiving Check No. 140 back from Shawnee, erroneously returned it to Leawood. On Wednesday, January 19, Leawood attempted to locate the first endorser of Check No. 140. It called Citizens; the substance of that telephone call, however, is disputed. Leawood returned the check to the clearinghouse on January 20, and on Friday, January 21, the check, marked "insufficient funds," was returned by the clearinghouse to Citizens.

On the following Wednesday, January 26, and pursuant to one of the rules of the Greater Kansas City Clearing House Association, Citizens wrote to the executive director of the clearinghouse as follows:

"Enclosed is a photo copy of the check in amount of $41,000.00 drawn by John R. Martin . . . on the Shawnee State Bank which has been returned to us. . . .

"[O]ur transit number 83-0291 does appear plainly near the center of the check, providing a reasonable means by which our bank could have been notified by the drawee bank that this check was being dishonored. I believe that rule VIII, 9 requires that the drawee bank 'attempt to give telephone notice to the first member or associate member endorsing the item'. It is my understanding that no such attempt was made . . . .

"We request that an audit be made of the route this item has taken and the timeliness and appropriateness of action on the part of each handler of the item."

The clearinghouse concluded its audit and reported on January 31 that:

"Our records indicate that this item was handled correctly by all banks involved. This handling includes the clearing and return of the item to your bank.

". . . The incorrect routing was a result of the incorrect MICR encoding done by the check printer.

"Concerning the giving of the necessary telephone notice of dishonor, Philip Treas of Shawnee stated to me that on January 18, 1977, his personnel made telephone calls to the First National Bank of Kansas City and the Leawood National Bank. The calls were made to the banks because your endorsement was at that time no longer legible while theirs was. On that basis and after having studied the actual item in question, we feel the Shawnee bank made the attempt as set out in our Rule VIII, Section 9.

"As a result of our audit we feel this item was handled correctly, and your bank must honor the credit requested by the Shawnee State Bank."

Citizens commenced this action by filing a four-count petition on April 28. Count I seeks recovery against Martin and Martin Construction and Realty Company for $41,000 actual and $10,000 punitive damages, based upon fraud. Plaintiff obtained a default judgment against Martin and Martin Construction; no appeal was taken from that judgment. Martin has since been convicted of felony theft on charges arising out of the giving of Check No. 140, and he has filed bankruptcy proceedings.

Count II of the petition seeks damages of $41,000 as against Deluxe based upon breach of implied warranties; this was later amended to include a claim of breach of duty arising from contract.

Count III seeks damages of $41,000 against Shawnee for negligent failure to give telephone notice to Citizens when Shawnee dishonored the check, and for negligent failure to recall the erroneously encoded checks.

Count IV seeks damages of $41,000 from Leawood for negli-

gent failure to notify Citizens on January 13 of the misrouting of the check and the consequent delay in clearing.

We should note that although Citizens earlier requested a clearinghouse audit to determine the *timeliness* of action on the part of each handler of the item, no claim is advanced in the petition or in this appeal that either Leawood or Shawnee was dilatory or failed to conform to the "midnight deadline" prescribed by the U.C.C. See K.S.A. 84-4-104(1)(*h*); 84-4-202(2).

Answers and cross-claims were filed, discovery was completed, and motions for summary judgment were filed by Citizens against Deluxe, Shawnee, and Leawood, and by Deluxe, Shawnee, and Leawood against Citizens. The motions were briefed and argued. The trial judge, in a carefully prepared and comprehensive memorandum, reviewed the undisputed facts and concluded as a matter of law:

"1. The rules of a clearinghouse measure the rights and duties of the clearinghouse, and the members; these rules have the force of law between the associated banks. The determination of the Greater Kansas City Clearinghouse estops the plaintiff bank against the defendant banks for any negligence in handling check No. 140 (see Rule XIV [2]) . . . . .

"2. Any negligence of defendant Deluxe in printing or recalling the checks in question and any negligence of defendant Shawnee in recalling the checks in question was superseded by the criminal acts of defendant Martin. The criminal acts of defendant Martin were the direct cause of plaintiff's loss.

"3. The plaintiff cannot recover against the defendant Deluxe under the theory of implied warranty (K.S.A. 84-2-313, et seq.). The plaintiff was not a purchaser nor is the plaintiff a 'natural person'."

Judgment was entered denying the motion of Citizens and granting the motions of Deluxe, Shawnee, and Leawood for summary judgment. This appeal followed.

We turn now to the first issue: whether the trial court properly interpreted and applied Clearing House Rule XIV (2) as it may apply to Shawnee and Leawood. Citizens, Shawnee, and Leawood are all members of the Greater Kansas City Clearing House Association; Deluxe, of course, is not. Various rules of the association and several sections of the U.C.C. are here involved.

Article 4 of the Uniform Commercial Code, K.S.A. 84-4-101 *et seq.*, governs bank deposits and collections. The Code, however, provides for variation of article 4 by agreement, and thus recognizes the applicability of clearinghouse rules by which member banks are bound. K.S.A. 84-4-103 provides in applicable part:

"(1) The effect of the provisions of this article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.

"(2) Federal Reserve regulations and operating letters, clearinghouse rules, and the like, have the effect of agreements under subsection (1), whether or not specifically assented to by all parties interested in items handled.

"(3) Action or nonaction approved by this article or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearinghouse rules and the like or with a general banking usage not disapproved by this article, prima facie constitutes the exercise of ordinary care."

The rules of the Greater Kansas City Clearing House Association provide in part as follows:

"Although non-machine processable items will be accepted for clearing at the Clearing House, members should use their best efforts to reduce the incidence of non-machine processable items so submitted. In no event shall a member permit its customers to consistently use items which are non-machine processable." Rule II (2).

"The giving of any necessary notice of dishonor or protest of dishonor shall be the responsibility of the drawee bank. No notice of dishonor or protest of dishonor shall be given or required on a dishonored item of less than $1,000.00. In addition to any other notice of dishonor with respect to items for $1,000.00 or more . . . . the drawee bank shall within a reasonable time after the decision to dishonor an item has been made, attempt to give telephone notice to the first Member or Associate Member indorsing the item if such clearing day is a banking day for such indorsing bank." Rule VIII (9).

"The Manager shall upon the request of any Member or Associate Member make a determination whether with respect to an item or items which are proper matter for clearing at the Clearing House delay in taking any action is excusable or permitted by applicable provisions of law, regulations of the Federal Reserve Board of Governors or operating letters of the Federal Reserve Bank of Kansas City. As between the members of the Association and any other persons whose rights are subject to the Rules of this Association, such determination shall be final and binding . . . ." Rule XIV (2).

Also of import in this discussion is K.S.A. 84-4-202, which provides in applicable part:

"(1) A collecting bank must use ordinary care in

. . . .

"(e) notifying its transferor of . . . delay in transit within a reasonable time after discovery thereof."

K.S.A. 84-4-105 includes several definitions which are helpful. These are:

"(*a*) 'Depositary bank' means the first bank to which an item is transferred for collection even though it is also the payor bank;

"(*b*) 'Payor bank' means a bank by which an item is payable as drawn or accepted;

"(*c*) 'Intermediary bank' means any bank to which an item is transferred in course of collection except the depositary or payor bank;

"(*d*) 'Collecting bank' means any bank handling the item for collection except the payor bank . . . ."

Briefly stated, Citizens contends that the trial court erred in its first conclusion of law in finding that the audit determination by the clearinghouse resolves not only the issues of untimely handling in the clearing process on the part of Leawood and Shawnee, but that it also resolves other negligent conduct claimed by Citizens: failure of Shawnee to give Citizens telephone notice of dishonor as required by Clearing House Rule VIII (9), and failure of Leawood to give Citizens telephone or other notice of delay as required by K.S.A. 84-4-202(1)(*e*). Citizens does not challenge the clearinghouse determination of *timely* handling.

The Clearing House audit rule, quoted above, would appear to apply to delay only. It provides that "[t]he Manager shall upon . . . request . . . make a determination whether . . . delay in taking any action is excusable or permitted." Citizens, however, did not limit its request to a determination of delay only. It spelled out its claim that the drawee bank, Shawnee, made no attempt to notify Citizens of dishonor, as it was required to do under Clearing House Rule VIII (9), and it sought a determination of both *the timeliness and appropriateness of action on the part of each handler of the item.*" The audit report found that the item was handled "correctly" as well as "timely" by all banks involved, and it specifically found that Shawnee made the attempt to give telephone notice required by Rule VIII (9). The audit report, therefore, exonerates all banks involved from responsibility for claimed delay in handling, and it exonerates Shawnee from Citizens' claim that it violated Rule VIII (9) in failing to give telephone notice to Citizens.

But does the report absolve Leawood from liability for failure to notify Citizens of delay in transit? The clearinghouse was not specifically asked to consider that matter, the audit report of the clearinghouse did not mention any duty on the part of Leawood to give notice of delay, and the audit rule which provides the contract basis and framework for arbitration makes no specific

mention of the giving of notice. It does encompass delay "in taking *any action.*" Does. this include failure to give required notice? We think that it does, and that delay in giving a required notice, whether of delay, loss, or dishonor, is within the scope of Clearing House Rule XIV (2). But from the record before us, we cannot tell whether the matter *was* considered in the preparation of the audit report.

Therefore, in order to determine whether the trial court erred or was correct in entering summary judgment on Citizens' claim against Leawood for failure to give notice, we must determine Leawood's status and whether it had a duty to give notice of delay. K.S.A. 84-4-202 requires a *collecting bank* to use ordinary care in notifying its *transferor* of delay in transit. Is Leawood a "collecting bank" under the definition contained in K.S.A. 84-4-105(*d*)?

A "collecting bank" which handles an item for collection makes various warranties to the payor bank. K.S.A. 84-4-207. Imposed upon it also are the various responsibilities enumerated in K.S.A. 84-4-202, including the duty to notify its transferor of loss or delay in transit.

What was Leawood's position in the chain of events before us? Citizens was the "depositary bank," the first bank to which the item was transferred by its depositor. Shawnee was the "payor bank," on which the item was drawn, and by which it was payable. Leawood did not handle the item for collection; it was a third party to whom the item was delivered *by mistake* because of the encoding error. It may fit within the broad definition of an "intermediary bank," a bank to which the item was transferred in the course of collection; but it was a wholly unnecessary and unintended transferor. It was not a correspondent bank, one with whom a forwarding bank ordinarily maintains a deposit account and to whom it sends checks for forwarding and collection. Leawood had no function to perform in the clearing of Check No. 140. It could not pay the check, since it was drawn on another bank and not on Leawood. We hold that Leawood was not a "collecting bank," as that term is defined in K.S.A. 84-4-105, and therefore it had no duty to give notice of delay to its transferor or to Citizens pursuant to K.S.A. 84-4-202(1)(*e*). Its sole duty was to return the check promptly to the clearinghouse; this it did. See *Sterling Nat. Bank v. Savings Banks Trust Co.,* 44 N.Y.2d 869, 407 N.Y.S.2d 476, 378 N.E.2d 1046 (1978).

Assuming, arguendo, that Leawood was a "collecting bank," was there "loss or delay in transit" within the meaning of K.S.A. 84-4-202(1)(e), necessitating the giving of notice? We have been cited no case, and our research has disclosed none, requiring that notice of delay in transit be given when a check is merely missent to the wrong bank. Surely, among the thousands of checks transferred daily, there must be a small percentage, resulting in a sizeable number, which are sent to the wrong banks. So long as these are returned and again put in the proper channels within the midnight deadline, no serious delay is encountered. As a practical matter, these checks are no doubt *returned* as soon as written notice would reach the transferor. The "loss or delay in transit" encompassed by the statute is serious and extended—as where a carrier vehicle is hijacked or destroyed, a check is lost in the mail, or the like, and it would appear to apply only to loss or delay during the physical transfer of the item between banks or loss while in a bank's possession. See 6 Michie, Banks and Banking, ch. 10, § 66, p. 167 (rev. perm. ed. 1975). We conclude that under the circumstances disclosed by this record, no duty to give notice of delay in transit arose. Summary judgment was properly entered in behalf of Leawood.

We turn now to Citizens' claim that the trial court erred in its ruling that any negligence of Deluxe in printing or recalling the checks and any negligence of Shawnee in recalling the checks were superseded by Martin's criminal acts, which acts were the direct cause of the loss. We will consider first the effect of the rule of intervening cause as applied to Deluxe.

Restatement (Second) of Torts § 448 (1965) appears directly in point. It reads:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

This court has recognized that one person's negligence is not the proximate or direct cause of an injury where there is a new, separate, wholly independent, and efficient intervening cause of the injury and the loss. Unforeseen acts of gross and wanton

negligence were found to be such an intervening cause, and to make the earlier negligence of other persons the remote cause to which no liability attaches, in *Hickert v. Wright,* 182 Kan. 100, 108, 109, 110, 319 P.2d 152 (1957). The rule is summarized in Syllabus ¶ 4:

"Where two distinct causes of an injury and damage are successive in time, the original act being simple negligence and the subsequent act being gross and wanton negligence, it is *held* that the subsequent act is an independent and efficient intervening cause which produced the injury and damage  . . . ."

And in *Sly v. Board of Education,* 213 Kan. 415, 516 P.2d 895 (1973), we spoke of intervening criminal acts, saying:

"The general rule is that when, between an original negligent act or omission and the occurrence of an injury, there intervenes a willful, malicious, and criminal act of a third person which causes the injury but was not intended by the person who was negligent, and could not reasonably have been foreseen by him, the causal chain between the negligence and the accident is broken." Syl. ¶ 9.

Assuming that Deluxe was originally negligent in printing and delivering Check No. 140 with the erroneous bank number, that act preceded Martin's criminal conduct by some two and one-half years. Martin's act—though made possible by the printing error—was a separate, distinct, and wholly independent cause of the loss. Deluxe had no knowledge that Martin was continuing to use these erroneously encoded checks and to negotiate them for amounts from $1,000 to $97,200 during the remainder of 1974, and during 1975, 1976, and 1977. It had no reason to suspect criminal action by Martin any more than it might suspect possible criminal action by anyone whose checks contained a printing error. No doubt the vast majority of depositors would not yield to the temptation to take criminal advantage of an error in the bank routing number on their personal checks; doubtless few would appreciate or recognize the potential for such conduct.

Comment (*a*) to § 448 states in substance that the rule of § 448 applies when the actor has no reason to expect that the third person would inflict intentional harm. Comment (*b*) states two exceptions, neither of which is applicable here. We conclude that the rule set forth in § 448 applies as to the claim of Citizens against Deluxe; that its negligence was remote; and that Martin's criminal act was the direct cause of the injury and loss.

K.S.A. 84-2-318 extends a seller's (Deluxe's) express or implied warranties to any natural person who is in the family or house-

hold of his buyer (Martin) or who is a guest in his home. Clearly Citizens does not come within the statute, and the trial court was correct in holding that plaintiff cannot recover against Deluxe under the warranty theory.

Next we consider the effect of the intervening cause rule as applied to the claimed negligence of Shawnee in failing to recall or otherwise stop Martin from continuing to use the erroneously encoded checks. Shawnee had actual notice that Martin was continuing to use the checks for sizeable transfers of cash. It knew that the checks were not machine processable; that the checks could not go through the clearing and collection process without manual intervention. It was, or should have been, aware of the built-in delay and the potential for harm. It had an obligation under Clearing House Rule II (2), which reads:

> "Although non-machine processable items will be accepted for clearing at the Clearing House, members should use their best efforts to reduce the incidence of non-machine processable items so submitted. In no event shall a member permit its customers to consistently use items which are non-machine processable."

One obvious purpose of the rule is the promotion of speed and certainty in collection; this is for the benefit of all member banks. The check at issue is, in form, machine processable; but it is in actual fact not so processable. An oversize check, or one without a bank routing number, or one which because of some physical impairment is not machine readable, would have to be manually cleared. Such checks, however, would in all probability be manually cleared to the correct drawee bank initially; they do not contain the built-in delay which is certain with checks of standard size containing an erroneous magnetically encoded bank routing number, which automatically are routed by the clearinghouse to the wrong bank.

Two other sections of the Restatement (Second) of Torts, in addition to § 448, are relevant to the consideration of Shawnee's alleged conduct. Sections 302 B and 449 read as follows:

> "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." § 302 B.

> "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." § 449.

Comments *a* and *b* to § 449 are also instructive and helpful. They read:

"*a.* This Section should be read together with § 302 B, and the Comments to that Section, which deal with the foreseeable likelihood of the intentional or even criminal misconduct of a third person as a hazard which makes the actor's conduct negligent. As is there stated, the mere possibility or even likelihood that there may be such misconduct is not in all cases sufficient to characterize the actor's conduct as negligence. It is only where the actor is under a duty to the other, because of some relation between them, to protect him against such misconduct, or where the actor has undertaken the obligation of doing so, or his conduct has created or increased the risk of harm through the misconduct, that he becomes negligent.

"*b.* The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity."

Applying § 449 to the claim of negligence on the part of Shawnee in failing to recall the checks, appellant claims that Shawnee by virtue of its membership in the Greater Kansas City Clearing House Association owed a duty to member banks, including Citizens, to protect against loss from the use of non-machine processable checks under Clearing House Rule II (2).

We have held that where there is a duty to protect others from danger, the fact that intervening acts are innocent, negligent, intentionally tortious, or criminal is immaterial; such conduct does not excuse or make remote the negligent conduct of the person who owed the duty to protect. In *Cooper v. Eberly*, 211 Kan. 657, 665, 508 P.2d 943 (1973), we cited with approval and we applied § 449 and Comment *b* of the Restatement (Second) of Torts. Justice (now Chief Justice) Schroeder, writing for a unanimous court, said:

"As applied to the facts in this case the likelihood that a third person may open gate No. 6 and leave it open, thereby permitting Eberly's horses to escape, makes Eberly's conduct in failing to padlock gate No. 6 and in failing to post 'no hunting or trespassing' signs to prevent the happening of such event negligent. It is immaterial whether the opening of gate No. 6 by a third person was innocent, negligent, intentionally tortious or criminal.

. . . .

"On the record here presented Eberly owed a duty to the plaintiffs to post his premises with 'no hunting or trespassing' signs and to padlock gate No. 6 which might be opened to unfenced adjacent land leading to a highway. Eberly's failure to comply with such duties, and the happening of the very event the likelihood of which made his conduct negligent, subjects him to liability." (pp. 665-666.)

Shawnee had a duty under Clearing House Rule II (2) which Deluxe did not share. Whether Shawnee was negligent in failing to recall the checks or take other steps to prevent their use after it had knowledge that Martin was using the checks, and whether under the facts and circumstances of this case there was a likelihood that a third person or another bank would be injured by the automatic delay in processing, are issues which may not be disposed of as a matter of law. We hold that the trial court erred in doing so.

We have found few cases involving encoding errors; one of these, however, appears helpful. In *Exchange Bank of St. Augustine v. Florida Nat. Bank,* 292 So. 2d 361 (Fla. 1974), a check drawn on a blank form was deposited at plaintiff bank, and forwarded to the collecting bank which printed an erroneous magnetic bank code. The improper code resulted in the check becoming lost for almost three years. The drawer refused to pay when the loss was brought to his attention. Within a month and a half of writing the check the drawer's account had been reduced below the amount of the draft. The collecting bank (the encoding bank), in accord with usual practices, charged the depositary bank with the loss, as the check was never forwarded to the drawer bank. The depositary bank brought suit against the collecting bank. A jury found the miscoding the proximate cause of the depositary bank's loss. After reversal at an intermediate appellate level, the Florida Supreme Court affirmed the trial court. See also *State, ex rel. Gabalac, v. Firestone Bank,* 46 Ohio App. 2d 124, 346 N.E.2d 326 (1975); *Ga. R. Bank &c. Co. v. First Nat. Bank,* 139 Ga. App. 683, 229 S.E.2d 482 (1976), *affirmed* 238 Ga. 693, 235 S.E.2d 1 (1977); and Brady on Bank Checks §§ 12.6, 15.24 to 15.28 (5th ed. Bailey 1979).

In summary, we hold that the trial court was correct in entering summary judgment against plaintiff and in favor of Deluxe, against plaintiff and in favor of Shawnee on the issue of notice of dishonor, and against plaintiff on its claim against Leawood for failure to give notice of delay, but the trial court erred in entering summary judgment against plaintiff on its claim against Shawnee for failure to recall the checks or take other steps to prevent Martin from using them.

The judgment of the trial court is therefore affirmed in part and

reversed in part, and the case is remanded to the trial court with directions to proceed in conformity with the views expressed in this opinion.