This appeal arises out of a trial court judgment adopting a magistrate's decision granting summary judgment in favor of Appellee Marles Business Systems, Inc. [hereinafter "MBS"]. For the following reasons, this Court affirms the trial court judgment.
MBS is a printing company that prints business materials and forms for its customers. MBS also acts as a wholesale distributor through its established relationships with national printing companies such as Unique Cheques who are in the business of printing business checks. When MBS customers place orders for printed checks with MBS instead of ordering the checks through their banks, MBS places the customers' orders with a national printer that specializes in check printing. The national printer then prints the checks and mails them directly to the customer at the customer's requested delivery address. MBS' customer pays MBS for this service and MBS in turn pays the national printer. MBS frequently does business with retail distributors who utilize MBS' printing and check distribution services for their clients.
On May 24, 1995, Appellant National City Bank [hereinafter "NCB"] filed a complaint against individual defendants Wickie Tutt and his accomplices, and MBS and Unique Cheques. In the complaint, NCB alleged that Wickie Tutt had orchestrated a fraud scheme by representing himself to MBS as a consultant/retail distributor and ordered checks which were subsequently forged and drawn on NCB and Dollar Savings Trust, NCB's predecessor in interest.
Wickie Tutt apparently perpetrated his scheme beginning in June of 1994 when he contacted MBS by telephone and portrayed himself as head of a consulting firm that represented minority businesses in the Youngstown area. Tutt ordered checks on numerous occasions from MBS on behalf of these legitimate businesses and provided to MBS sample checks and valid account numbers which he had somehow obtained of the businesses. MBS placed Tutt's orders and the checks would be delivered to addresses specified by Tutt; addresses which were different than those of the entities for whom the checks were ordered. At no time did MBS ever verify or attempt to verify Tutt's identity or his authority to order checks for these businesses. MBS had never had previous dealings with Tutt or any of the legitimate businesses used by Tutt.
The checks were sent to Tutt and his accomplices who would forge their signatures on the checks and take them to NCB to negotiate. NCB paid out the aggregate amount of $22,550.78 to Tutt and his accomplices throughout the scheme. Pursuant to Uniform Commercial Code obligations, when the forgery was discovered NCB reimbursed the account holders for their losses. NCB filed various causes of action against Tutt and his accomplices. NCB also asserted negligence against Appellee MBS and Unique Cheques in providing the checks to Tutt.
MBS timely answered the complaint and filed a counterclaim alleging that NCB committed libel and slander in its complaint against it. The trial court dismissed MBS' counterclaim and granted NCB default judgments against Tutt and some of his accomplices. NCB later voluntarily dismissed the rest of the individual defendants and Unique Cheques, leaving only MBS as the remaining defendant.
On March 7, 1996, MBS filed a motion for summary judgment asserting that NCB could not show that MBS owed a legal duty to NCB, that negotiation of the obviously forged and sometimes misspelled signatures on the checks was the intervening and proximate cause of NCB's injury and that the willful and malicious acts of Tutt and his accomplices broke any causal chain between MBS' alleged negligence and NCB's loss.
On April 10, 1996, NCB filed its motion in opposition to MBS' motion for summary judgment. On May 8, 1996, the magistrate granted MBS' motion for summary judgment finding that NCB was unable to point to any source that imposed a duty upon MBS as a supplier to verify authorization from the businesses Tutt alleged that he represented. Further, the magistrate found that NCB's act in honoring the forged signatures on the checks was the cause of its own losses.
On May 23, 1996, NCB filed objections to the magistrate's decision. On May 24, 1996, the trial court adopted the magistrate's decision in favor of MBS. The trial court was apparently unaware that NCB filed objections as its judgment entry indicated that no written objections to the magistrate's decision were filed. On June 25, 1996, NCB filed its notice of appeal.
On appeal, NCB raises the following assignment of error:
 "THE TRIAL COURT ERRED WHEN IT ENTERED A SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE MARLES BUSINESS SYSTEMS, INC. ON PLAINTIFF-APPELLANT NATIONAL CITY BANK, NORTHEAST'S CLAIM FOR NEGLIGENCE."
Within this assignment of error, NCB raises four issues, two relating to duty and two relating to proximate cause. Since we find that NCB failed to meet its reciprocal burden of establishing these essential elements of negligence in summary judgment, we find the assignment of error without merit.
In reviewing a trial court's grant of summary judgment, an appellate court reviews the evidence de novo, but applies the same standard used by the trial court. Varisco v. Varisco
(1993), 91 Ohio App.3d 542, 545, citing Parenti v. GoodyearTire and Rubber Co. (1990), 66 Ohio App.3d 826, 829. Civ.R. 56(C) provides that before a court may grant summary judgment, it must determine that:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. In considering an appeal from summary judgment, this Court should look at the record in the light most favorable to the party opposing the motion. Murphy v. City of Reynoldsburg (1992),65 Ohio St.3d 356, 360.
The movant has the initial burden of informing the trial court of the basis for its motion and must identify the parts of the record that show that no genuine issue of material fact exists as to the essential elements of the opposing party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once this initial burden is met, the opposing party has a reciprocal burden to raise specific facts that demonstrate that a genuine issue for trial exists. Id. This Court has held that Civ.R. 56(C) requires that a court grant summary judgment, after adequate time for discovery and upon motion, against a party who fails to sufficiently show the existence of the essential elements on which that party will bear the burden of proof at trial. Lovejoy v. Westfield Nat. Ins. Co., (Ohio App. 7 Dist. 1996), 116 Ohio App.3d 470, 474, citing Dresher v. Burt (1996),75 Ohio St.3d 280. To defeat a summary judgment motion, the opposing party must present some evidence which tends to show that a genuine issue of material fact exists. Lovejoy,116 Ohio App.3d at 474.
In its summary judgment motion, MBS met its initial burden in arguing that NCB could not establish the essential element of duty to prove a cause of action in negligence against it. MBS asserted that no statute or contract imposed a duty upon it to protect NCB and that no special relationship existed between the two to establish a duty. MBS attached an affidavit from the President of the Printing Industry Association of Northeastern Ohio who confirmed that MBS conformed with all custom and usage practices in the printing industry and thus acted in a reasonable and ordinary manner.
MBS also argued that NCB could not establish proximate cause between its check printing and NCB's injury. Wickie Tutt and his accomplices' criminal acts and NCB's own negligence in negotiating the checks without ascertaining the signatories' identities and verifying the signatures were the intervening and superseding causes of NCB's injuries. MBS attached copies of some of the checks containing the forged signatures to assert that while NCB did not even verify identification of the persons cashing the checks to ensure that they were authorized on the accounts, NCB more importantly also failed to observe blatant and obvious forgeries in some instances, such as misspellings of the signatories names by the forger on the checks. MBS next attached the affidavit of its office manager who attested that she had never encountered a previous instance where a retail distributor ordered checks and used them to defraud others. The office manager also attested that even though MBS never checked into the identity of customers of a retail distributor which placed an order, this practice was in conformity with the customs of the industry. MBS attached a copy of the Printing Industry Trade Customs to its motion.
Since the initial burden was met, the onus shifted to Appellant to demonstrate specific facts showing that a genuine issue existed for trial and to provide a sufficient showing of the essential elements of its claim in negligence, including duty and proximate cause. To establish a duty, NCB relied on caselaw stating that duty can be established through foreseeability. NCB asserted that it was foreseeable to MBS that if it failed to verify with the actual account holder a representative's identity and whether that person had authority, the alleged representative could fraudulently withdraw funds from the account holder's checking account.
NCB also argued that MBS' negligence is not superseded by NCB's own intervening act in failing to verify signatures and identities before negotiating the checks even though NCB's negligence was later in time. NCB cited Sections 448 and 449 of the Restatement of the Law of Torts 2d for the proposition that its own conduct and the conduct of Wickie Tutt and his accomplices does not eradicate MBS' negligent acts and liability.
Even viewed in a light most favorable to it, NCB has not met its necessary burden to show the existence of a duty and proximate cause in order to establish its claim in negligence against MBS. To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty and that injury proximately results from the breach. Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75, 77, citing Di Gildo v.Caponi (1969), 18 Ohio St.2d 125; Feldman v. Howard (1967),10 Ohio St.2d 189.
The existence of a duty is an essential element in a cause of action in negligence. Estates of Mrogan v. Fairfield FamilyCounseling Center, (1996), 77 Ohio St.3d 284, 293 [citationsomitted]. There is no strict formula for ascertaining whether a duty exists. Mussivand v. David (1989), 45 Ohio St.3d 314, 318. While the scope and extent of a duty is a question of fact, the existence of such a duty is a question of law. Id. Duty "* * * is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " Id., quoting Prosser, Law of Torts (4th ed. 1971) pp. 325-326. To determine if the imposition of duty in particular circumstances is justified, courts look to ". . . the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, Palsgraf Revisited (1953), 52 Mich.L.Rev. 1, 15). * * *" Id., quoting Weirum v. RKO General,Inc. (1975), 15 Cal.3d 40, 46, 539 P.2d 36, 39.
NCB asserts that MBS' duty arises out of MBS' ability to foresee that a third party would use the checks printed for another to defraud a bank. NCB is correct that the existence of a duty depends upon the foreseeability of the injury.Menifee, 15 Ohio St.3d at 77, citing Ford Motor Co. v.Tomlinson (C.A. 6, 1956), 229 F.2d 873; Gedeon v. East Ohio GasCo. (1934), 128 Ohio St. 335. The test for foreseeability is whether a "* * * reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Menifee, supra,
citing Freeman v. United States (C.A. 6, 1975), 509 F.2d 626;Thompson v. Ohio Fuel Gas Co. (1967), 9 Ohio St.2d 116; Mudrichv. Standard Oil Co. (1950), 153 Ohio St. 31. The foreseeability of harm usually depends on the defendant's knowledge. Thompson, supra.
In Menifee, supra, the Ohio Supreme Court found that:
 "* * * [i]n determining whether appellees should have recognized the risks involved, only those circumstances which they perceived, or should have perceived, at the time of their respective actions should be considered. Until specific conduct involving an unreasonable risk is made manifest by the evidence presented, there is no issue to submit to the jury." Menifee, supra, quoting Englehardt v. Philipps (1939), 136 Ohio St. 73; Prosser Keeton Law of Torts (5 Ed. 1984) 169, Section 31.
In applying these principles of law to the instant case, MBS set forth sufficient evidence in summary judgment to show that it did not foresee the injury that would result to NCB. As earlier discussed MBS provided the office manager's affidavit who stated that MBS had never previously experienced a criminal use of its printed checks by a third party representing himself to be a consultant for companies holding bank checking accounts. The record does not reflect and NCB certainly did not argue that MBS had any type of control over the actions of Tutt and his accomplices. Nor does the record reflect that in any other fashion MBS had reason to know that its printed checks would be used for criminal purposes. The lack of foreseeability coupled with a lack of duty resulting from any other source such as statutory law or contractual privity between MBS and NCB leads us to conclude that summary judgment was properly granted in favor of MBS.
While there is no law in Ohio on the subject, it would appear logical that we would not impose any type of duty upon a check printer for a loss sustained by a third party bank. The loss in this instance should properly fall on NCB as it was in the best position to protect itself from this loss. NCB was the entity which dealt last with those directly causing its loss. NCB failed to take the necessary and proper steps to verify the identities and the signatures of those cashing the checks. Some of the checks signed by the forgers contained names that were clearly misspelled while others contained signatures of persons who were clearly not authorized to cash checks on the account. Had NCB exercised due care in verifying this information before negotiating the checks, it would not have sustained the alleged losses.
This argument leads the Court into the issue of proximate cause. Even assuming arguendo that NCB can successfully argue that it is owed some kind of duty by MBS, NCB fails to establish proximate cause, the other essential element of negligence. In its summary judgment motion, MBS argued that the criminal acts of Tutt and his accomplices as well NCB's own negligence in not verifying the identification and signatures of check signatories broke any causal connection between any alleged negligence of MBS and NCB's loss. NCB argued that the connection was not broken because MBS set the original act in motion which caused NCB's loss when it issued printed checks without verifying Tutt's authority.
There appears to be no authority as to the specific problem before us, that is, whether any relationship exists between a check printer and a bank on which the checks are drawn when the two have no other relationship to one another. However, the Ohio Supreme Court has discussed intervening acts of criminal conduct and the effect they have on the negligent act of another:
 "Thus, the law usually does not require the prudent person to expect the criminal activity of others. As a result, the duty to protect against injury caused by third parties, which may be imposed where a special relationship exists, is expressed as an exception to the general rule of no liability." Federal Steel Wire Corp. v. Ruhlin Const. Co. (1989), 45 Ohio St.3d 171, 174, citing Prosser Keeton, Law of Torts (5 Ed. 1979) 201-203, Section 33; Tarasoff v. Regents of the Univ. of Cal. (1976), 17 Cal.3d 425, 551 P.2d 334; Note, Negligence Liability for the Criminal Acts of Another (1982), 15 J. Mar. L.Rev. 459, 465.
The closest analogy to the present matter appears inState v. Martin, where the Supreme Court of Kansas held that a check printer was not liable in negligence to a bank when it inadvertently printed the wrong encoding numbers on the bottoms of checks printed for a customer. (1980), 227 Kan. 580, 587,609 P.2d 670, 677. The bank customer continued to fraudulently use the checks after he was notified that he should destroy any remaining checks in his possession. The Kansas Supreme Court found that even if the check printer's acts were negligent, the acts were too remote to hold the printer liable to the bank.Id.
The Kansas court considered arguments made under the Restatement of Torts 2d section 448 and held that where the check printer had no knowledge that the customer would continue to use the erroneously encoded checks and had no reason to suspect the criminal conduct of the customer, any alleged negligence of the printer was superseded by the customer's criminal acts in using the checks. The court held that the latter's acts were direct, separate, distinct and wholly independent causes of loss to the bank. Id. The Martin court also reaffirmed its earlier holding in another case that:
 "Where two distinct causes of an injury and damage are successive in time, the original act being simple negligence and the subsequent act being gross and wanton negligence, it is held that the subsequent act is an independent and efficient intervening cause which produced the injury and damage." Id., quoting Hickert v. Wright (1957), 182 Kan. 100, syllabus 4, 319 P.2d 152, syllabus 4.
We find this rationale applicable to the instant case. The unanticipated criminal acts of Wickie Tutt and his accomplices superseded the original act and alleged negligence of MBS in printing the checks. Further, MBS had no reason to suspect these criminal acts and no special relationship with NCB to try to control Tutt and his accomplices or the use of its checks. Further, even assuming that MBS was negligent in printing the checks without verifying Tutt's identity, this would be simple and remote negligence. The actions of Tutt and his accomplices and NCB's subsequent negligence in not observing (much less verifying) the signatures or the signatories remain the direct causes of NCB's loss.
Thus, NCB has not established sufficient evidence of a duty or proximate cause so as to create a genuine issue of material fact, even viewing the evidence in a light most favorable to it. Reasonable minds could not conclude that MBS owed a duty to NCB or proximately caused NCB's loss.
For all of the foregoing reasons, we find that the assignment of error advanced by Appellant NCB is without merit. Accordingly, the trial court judgment is hereby affirmed.
Cox, J. concurs.
Donofrio, P. J., concurs.
APPROVED:
 _________________________ CHERYL L. WAITE, JUDGE