## 52482. GEORGIA RAILROAD BANK & TRUST COMPANY v. FIRST NATIONAL BANK & TRUST COMPANY OF AUGUSTA et al.

SMITH, Judge.

Georgia Railroad Bank & Trust Company (plaintiff) brought an action against The First National Bank & Trust Company of Augusta (defendant) to recover $22,500. The defendant filed a third-party complaint against William W. Jones and Bill Jones Dodge City, Inc. The plaintiff moved for a judgment on the pleadings and for summary judgment. The defendant also made a motion for summary judgment. The trial court overruled plaintiff's motion for judgment on the pleadings and its motion for summary judgment and granted defendant's motion for summary judgment against the plaintiff. The plaintiff appeals the order of the trial court granting summary judgment in favor of the defendant.

The record shows the following undisputed facts. Both plaintiff and defendant utilize electronic equipment in the handling and processing of checks. When the plaintiff processes a check, it marks the check with magnetic coding ink. The check is subsequently handled by each bank in the chain of collection by electronic equipment which reads the magnetic coding ink. The amount of the check which has been encoded thereon is considered the amount of the check throughout the chain of collection.

On or about September 12, 1974, Charles Freeman deposited into his checking account with plaintiff bank a check in the amount of $25,000. The check was drawn on the defendant bank by William W. Jones. The plaintiff under-encoded the check as being $2,500; thus Freeman's account was incorrectly credited with a deposit of $2,500 rather than $25,000.

Jones' check was presented to the defendant through the Augusta Clearing House on or about September 13,

1974. It was processed by the defendant as a $2,500 item. The plaintiff was paid $2,500 as of the date of receipt, and Jones' account was debited in the amount of $2,500 rather than $25,000.

On September 28, 1974, the plaintiff notified Freeman that his account had been overdrawn. Plaintiff's encoding error was then discovered, and the plaintiff credited Freeman's account in the amount of $22,500. On September 27, the plaintiff notified the defendant of its encoding error and requested payment from the defendant in the amount of $22,500. The defendant contacted Mr. Jones and informed him regarding what had happened. Jones' canceled check had already been returned in his monthly statement. Jones told the defendant not to "bother" his account. The defendant then informed plaintiff that it was unable to pay the requested amount even though there were sufficient funds in Jones' account to comply with the demand for payment.

The issue presented is whether the collecting bank can recover the amount of the deficiency from the drawee bank where the latter pays the encoded amount of an under-encoded check. This issue is one of first impression in this state and, as far as we can determine, in any state. Although no court has dealt with this particular problem, various articles and treatises have discussed this specific situation. See B. Clark, The Law of Bank Deposits, Collections and Credit Cards 217 (1970); Brady, The Law of Bank Checks 326-328 (1969); J. Clarke, Mechanized Check Collection, The Business Law 994-1000 (July 1959).

No particular provision of the Uniform Commercial Code controls the present situation; however, several of its provisions are applicable to the ultimate resolution of the problem. Code § 109A-4—213 (1) provides: "An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first: . . . (c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith. . . Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item." The final sentence of the above section would create liability on the part of the drawee

bank for the amount of the check when any "final payment" had been made. In the present case, the check had been marked "paid" and returned to the drawer; thus, the item had been posted to the account of the drawer. We find that the posting of the item, although in a smaller amount than the true amount of the item, was sufficient to constitute final payment within the meaning of the statute. Therefore, the item had been "finally paid" under the provision of subparagraph (c) above; and the payor bank became accountable for the amount of the item.

Further, Code § 109A-4—302 provides in pertinent part: ". . . if an item is presented on and received by a payor bank the bank is accountable for the amount of (a) a demand item. . . if the bank . . . retains the item beyond midnight of the banking day of receipt without settling for it or . . . does not pay or return the item . . . until after its midnight deadline. . ." In this case, the payor bank retained the item past the midnight deadline without completely settling for it; thus, under Section 4—302, the payor bank would be accountable for the amount of the retained check.

The payor bank contends that the drawer stopped payment on the check when he told the payor bank not to "touch" his account. The drawer of a check has the right to stop payment of it at any time *before it has been certified or paid by the drawee.* See *Tidwell v. Bank of Tifton,* 115 Ga. App. 555 (155 SE2d 451). As discussed above, the item had been "finally paid" by the drawee prior to the drawer's attempted revocation. Once the item was finally paid, the right to revoke settlement was lost.

We conclude that the drawer is responsible for the amount of the check according to its tenor. Since only the encoded amount has been paid, the drawee is accountable to the collecting bank for the deficiency. Accordingly, the trial court erred in granting summary judgment for the defendant. Summary judgment should have been granted in favor of the plaintiff against the defendant in the amount of the deficiency.

We are not here concerned with a situation wherein the drawee cannot recover from the drawer the amount of the deficiency. In such a situation there would possibly exist a defense or counterclaim in favor of the drawee

bank against the collecting bank which had under-encoded the check. See J. Clarke, Mechanized Check Collection, supra, p. 1004. The record in the present case shows that the drawer's account contained sufficient funds, as of the date payment was demanded by plaintiff, to cover the deficiency.

*Judgment reversed. Marshall and McMurray, JJ., concur.*

ARGUED JULY 7, 1976 — DECIDED SEPTEMBER 10, 1976 — REHEARING DENIED SEPTEMBER 29, 1976 — ▮▮▮▮▮▮▮▮

*Nixon, Yow, Wallace & Capers, Samuel C. Waller,* for appellant.

*Hull, Towill, Norman, Barrett & Johnson, Patrick J. Rice, W. Barry Williams,* for appellees.