**Bank One, Akron, N.A.**
v.
**National City Bank**
[Cite as 2 AOA 462]

Case No. 14259
Summit County, (9th)
Decided March 14, 1990

R.C. 1304.03
R.C. 1304.19
R.C. 1304.22

Donald N. Towne and Donald W. Davis, JR., Attorneys at Law, 2210 First Nat'l. Tower, Akron, OH 44308 for Plaintiff.

David J. Naftzinger and Jennifer E. Millson, Attorneys at Law, 1100 Nat'l. City Bank Bldg., Cleveland, OH 44114 for Defendant.

*Per Curiam.*

Plaintiff-appellant appeals the trial court's order finding plaintiff-appellant responsible for a loss due to a misencoded check. We affirm.

On March 16, 1987, Mark Smith Cycles, Inc. ("Mark Smith"), issued a check to Rick Case Motors ("Rick Case"), in the amount of $50,000. Rick Case deposited the check into its account held with plaintiff-appellant, Bank, One, Akron, NA ("Bank One". Bank One then encoded the check with Magnetic Ink Character Recognition numerals ("MICR") in the amount of $5,000 instead of $50,000. MICR allows computers to mechanically read the check during the collection process.

Bank One credited Rick Cases's account $5,000 and processed the check through the Cleveland Clearing House to the drawee bank, defendant-appellee, National City Bank ("NCB"). NCB's computers read the MICR and paid the check in the amount of $5,000. NCB subsequently posted the check to Mark Smith's account and debited the account $5,000.

Rick Case subsequently realized that there had been an error in the crediting of Rick Cases's account and notified Bank One. One then attempted to collect the $45,000 from Mark Smith's account at NCB. NCB refuse to pay the remaining $45,000, because Smith had previously filed a petition in bankruptcy and there were insufficient funds in the account. NCB had previously set-off the amount in Mark Smith's account to satisfy an outstanding debt Mark Smith owed to NCB.

Bank One then credited Rick Case's account in the amount of $40,000 and brought this action to recover $45,000 from NCB. NCB filed a subsequent answer and counterclaim. The case was submitted to a referee on stipulated facts and evidence. The referee recommended that the trial court find in favor of Bank One ad grant damages in the amount $45,000 and costs. However, the trial court rejected the referee's report and found in favor of NCB. Bank One now appeals.

### ASSIGNMENTS OF ERROR

"I.    The trial court erred by excusing National City from its duty to pay a check as drawn as required by Section 1304.19 and 1304.22 of the Ohio Revised Code.

"II.   The trial court erred by holding that National City was excused from its legal duty to pay an item as drawn.

"III.  The trial court erred by holding that Bank One's failure to properly encode the check constitutes negligence."

Bank One asserts that the trial court erred in finding Bank One negligent in encoding Mark Smith's check. Bank One also contends that the trial court erred in excusing NCB from its statutory duty pursuant to R.C. 1304.19 and 1304.22 to pay Mark Smith's check according to its tenor on the face of the check.

R.C. 1304.19 provides in part:

"(A) An item is finally paid by a payor bank when the bank has done any of following, whichever happens first: ***.

"(3) completed the process of posting the item to the indicated account of the drawer, maker, or other person to be charged therewith; ***.

"Upon a final payment under divisions (A) (2), (3), or (4) of this section, the payor bank shall be accountable for the amount of the item. ***."

R.C. 1304.22 provides in part:

"[I]f an item is presented on and received by a payor bank, the bank is accountable for the amount of:

"(1) a demand item *** if the bank *** retains the item beyond midnight of the banking day of receipt without settling for it or, *** does not pay or return the item or send notice of dishonor until after its midnight deadline; ***."

However, R.C. 1304.03 also provides in part:

"(A) The effect of the provision of sections 1304.01 to 1304.34, inclusive, of the Revised Code, may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.

"(B) Federal Reserve regulations and operating letters, clearing house rules and the like, *have the effect of agreements under division (A) of this section,* whether or not specifically assented to by all parties interested in items handled." (Emphasis added.)

In the case *sub judice,* we hold that R.C. 1304.19 and R.C. 1304.22 are inapplicable. The dispute in the instant case is between banking institutions.

The duties owed by each institution in regard to encoding and processing checks are controlled by the Rules and Regulations of the Cleveland Clearing Association, of which Bank One and NCB are both members. The clearing house rules have the effect of an agreement pursuant to R.C. 1304.03.

Section II(2) of the Rules and Regulations of the Cleveland Clearing House Association provides:

"***.

"The quality of encoding from each encoding unit shall be verified by the processing bank to insure the processability of machinable items."

"***."

Section II(4) of the Rule and Regulations of the Cleveland Clearing House Associations provides:

"***.

"Improperly amount encoded items must be made physically non-machinable or properly re-encoded. If properly re-encoded it may be left with other machinable items. If made non-machinable it must be included with non-machinable items. The procedure for accomplishing this requirement shall be left to the discretion of the individual member banks."

"***."

In the case *sub judice,* the parties stipulated that Bank One misencoded Mark Smith's check. The clearing house rules provide that Bank One had a duty to verify the encoding on the check. Bank One also had a duty a after discovering the misencoded check to make the misencoded check non-machinable or properly re-encode the misencoded check. Further, Bank One had a duty, pursuant to R.C. 1304.03, of ordinary care in the encoding of the check.

We hold that there was sufficient evidence presented from which the trial court could determine that Bank One breached its duty of ordinary care in the encoding of Mark Smith's check. Bank One also breached its contractual duty to NCB by allowing the misencoded check to be included with the machinable items to be processed by NCB.

Pursuant to R.C. 1304.19 and R.C. 1304.22, NCB ordinarily would be liable for the original tenor of a check that NCB has accepted as "final payment." See *Georgia RR. Bank & Trust Co.* v *First Natl. Bank and Trust Co. of Augusta* (1976), 139 Ga. App. 683, 229 S.E. 2d 482, 484. However, R.C. 1304.03 allows the parties to vary R.C. 1304.19 and R.C. 1304.22 by agreement. The clearing house rules allow NCB to rely on Bank One to remove all misencoded checks from the machinable checks sent to NCB for payment.

We hold that Rules and Regulations of the Cleveland Clearing House Association shifted the liability for failing to pay the Check according to its original tenor to Bank One, when Bank One breached its agreement with NCB to verify and remove misencoded checks from machinable items.[1] The first, second and third assignments of error age overruled.

## ASSIGNMENTS OF ERROR IV

"The trial court erred by finding that National City would be damaged if hold accountable for the face amount of the check."

NCB exercised its self-off rights and closed Mark Smith's account to settle and outstanding debt that Mark Smith owed to NCB. Bank One contends that NCB could not be damaged, because NCB reaped a windfall through the set-off. The set-off occurred subsequent to the time Bank One presented Mark Smith's $50,000 check underencoded in the amount of $5,000, and prior to Bank one attempting to collect the remaining $45,000. Bank One alleges that $45,000 of the funds in Marks Smith's account were earmarked for Bank One, and NCB wrongfully used these funds to set-off Mark Smith's debt to NCB.

In the absence of evidence to the contrary, a deposit in a bank is presumed to be general in its nature. *Squire, Supt. of Banks* v. *Oxenreiter* (1936), 130 Ohio St. 475, paragraph one of the syllabus. Ordinarily, the relation existing between banks and their depositors is that of debtor and creditor, out of which the right of set-off arises. *United States* v. *Butterworth-Judson Corp.* (1925), 267 U.S. 387, 394. In the absence of an agreement to the contrary, a deposit, not made specifically applicable to some other purpose, may be applied by the bank in payment of the indebtedness of the depositor. *Id.* at 394-95.

In the case *sub judice,* we hold that the $45,000 in Mark Smith's account was not earmarked for full payment of the underencoded check prior to the set-off. Bank One did not give sufficient notice to NCB that the check was not paid according to its tenor until after Mark Smith's account was closed. The fact that NCB was the creditor that received the funds from Mark Smith's account as a result of the set-off is of no consequence. The set-off was proper, and NCB would be damaged if it was held liable to pay out from funds properly received through the set-off. The fourth assignments of error is overruled.

## ASSIGNMENTS OF ERROR V

"National City was waived its right to a trial or other hearing and therefore cannot prevail on its counter-claim or defense."

Bank One asserts that NCB has waived its right to a new hearing to determine if Bank One is negligent. We have held that there was sufficient evidence submitted from which the trial court could find Bank One negligent and in breach of the clearing house agreement. The fifth assignment of error is overruled.

*Judgment affirmed.*

WILLIAM R. BAIRD
CIRIGLIANO, J.
Concurs

QUILIN, P. J.
Dissents saying:

NCB is strictly liable for the amount of the item (the check) which it should have paid, but did not. R.C. 1304.19 (UCC 4-123) and R.C. 1304.22 (UCC 4-302). *SOS Oil Corp.* v. *Norstar Bank of Long Island* (1989), ___ App. Div. ___, 548 N.Y. Supp. 2d 308.

NCB attempts to avoid this strict liability as to Bank One by claiming that the Rules and Regulations of the Cleveland Clearing House Association constitute an agreement which varies its otherwise strict liability. I cannot agree.

The clearing house rules do not so provide. There is simply nothing in those rules which shifts liability to the bank which misencodes a check. Such a shift in liability would be dramatic and far reaching. If the drafters of the rule had so intended, it would have been no great task to so provide. They did not. I do not believe that such a profound alteration of the UCC should be accomplished by inference from a set of rules which are, at best, ambiguous on the subject.

NCB, for its own business reasons, has determined it will not pay the amount of an item presented to it, but rather will rely on a third party's marking on the item. The risk NCB runs is apparent from the facts in this case. It is not difficult to hypothecate other situations in which NCB will expose itself to liability for failing to pay the amount of the item presented.

This does not mean that NCB is without a possible remedy for the negligence of Bank One. In fact, NCB in this very case filed a counterclaim against Bank One claiming that if NCB was liable on the check then Bank One was liable to NCB for Bank One's negligence. Neither the trial court or this court reached that question.

The problems relating to misencoded checks are primarily of concern to banks. These problems can be intricate and complex. It is best if the banking community has a major voice in the change of established laws. Steps are being

taken in that direction. We are told that the proposed ALI/NCCUSL revisions to Article 4 (specifically, revised section 4-207) would explicitly provided that an encoding bank warrants the accuracy of encoded amounts, and is liable for any resulting loss. See *First Natl. Bank of Boston* v. *Fidelity Bank*, N.A. (E.D. Pa. 1989), 724 F. Supp. 1168, 1172. Until such time as new directions are established, we should apply the traditional law, i.e., the payor bank is strictly liable for the amount of the item. We should not create new warranties where none now exist.

I also note that Section Seven of the Constitution of the Cleveland Clearing House Association provides that it will hear complaints by its members involving disputes over clearing house rules. Why this expert forum was not utilized is unexplained.

I would hold that NCB is strictly liable for the amount of the item which it failed to pay. I would remand for a considerations of NCB's counterclaim. This would include considerations of comparative fault and proximate cause.

---

[1]. Assuming, *arguendo*, that the clearing house rules did not apply, we would reach the same conclusion through the use of equitable principles. Bank One would be estopped from claiming more than the encoded amount of the check, and NCB would have the duty to mitigate damages by recourse to the account of the maker of the check. See, *e.g.*, *First Natl. Bank of Boston* v. *Fidelity Bank, Natl. Assoc.* (E.D. Pa. 1989), 724 F. Supp. 1168, 1172-73. However, mitigation was not possible under the instant facts, as Mark Smith's account was insufficient to cover the amount of the check when Bank One correctly preserved the check.