No. 69,653

SINCLAIR OIL CORPORATION, *Plaintiff*, v. SYLVAN STATE BANK, *Defendant*.

(869 P.2d 675)

Opinion filed March 4, 1994.

*F. Allen Speck*, of McDowell, Rice & Smith, of Kansas City, Missouri, argued the cause, and *Charles E. Fowler* and *Katharina E. Beal*, of the same firm, were with him on the brief for plaintiff.

*B. Scott Tschudy*, of Perry, Hamill & Fillmore, of Overland Park, argued the cause and *Thomas A. Hamill*, of the same firm, was with him on the brief for defendant.

*Anne Lamborn Baker*, of Wright, Henson, Somers, Sebelius, Clark & Baker, of Topeka, for *amicus curiae* Kansas Bankers Association.

*John J. Gill*, of Washington, D.C., for *amicus curiae* American Bankers Association.

*Robert G. Ballen* and *Laura F. H. McDonald*, of Morrison & Foerster, of Washington, D. C., for *amicus curiae* National Automated Clearing House Association.

The opinion of the court was delivered by

DAVIS, J.: This case is pending in the United States District Court for the District of Kansas. It comes before this court on three questions certified by the United States District Court pursuant to K.S.A. 60-3201 *et seq*. With the certified questions, the United States District Court in its memorandum and order has provided us with a factual background and summary of the legal issues presented. In order to focus upon the questions in context, we set forth verbatim the order received:

"Pursuant to K.S.A. 60-3201 et seq., this court hereby certifies to the Kansas Supreme Court the following questions of Kansas law which are deemed to be determinative of this action and as to which no controlling precedent exists in the decisions of the Kansas Supreme Court or the Kansas Court of Appeals:

(1) Where electronic debit items are involved, do the National Automated Clearing House Rules ('NACHA Rules') and Operating Letter No. 12 of the Federal Reserve Bank of Kansas City ('Operating Letter') modify the provisions of Article IV of the Kansas Uniform Commercial Code as they relate to the presentment and return of automated clearing house ('ACH') items?

(2) If so, are the NACHA Rules and Operating Letter applicable to a dispute between a bank that receives an ACH credit item and the party initiating that item where the initiating party is not a financial institution and is not a party to the NACHA Rules or Operating Letter?

(3) If the NACHA Rules and Operating Letter are applicable to a dispute between these parties, is the measure of damages the face amount of the debit item under K.S.A. 84-4-302(a), or the actual damages directly attributable to the late return of the item under K.S.A. 84-4-103(e)?

The applicability of NACHA Rules and a Federal Reserve Operating Letter to a dispute between a payee and a payor bank is a question of first impression in Kansas. Neither the Kansas Supreme Court nor the Kansas Court of Appeals has resolved this issue. Therefore, the determination of whether, under Article IV of the Kansas Uniform Commercial Code, the rules and operating letter will govern a dispute between these parties is proper for certification from the United States District Court for the District of Kansas to the Kansas Supreme Court pursuant to K.S.A. 60-3201.

## "I. Factual Background

"The facts relevant to the issues herein certified to the Kansas Supreme Court are as follows: "This case comes before the United States District Court for the District of Kansas pursuant to diversity jurisdiction, 28 U.S.C. § 1332, and concerns the allegedly untimely return of four electronic debit items from a payor bank to the initiating party. Plaintiff Sinclair Oil Corporation ('Sinclair') is a Wyoming corporation which maintained a business relationship with Home Oil Company ('Home Oil'), a Kansas distributor of its products. Sinclair was in the practice of making electronic debits to Home Oil's account at defendant Sylvan State Bank ('Sylvan') for invoices due for products delivered to Home Oil.

"From July 20, 1990 through July 27, 1990, Sinclair electronically debited Home Oil's account at Sylvan State Bank four times, totalling $240,893.64. Sylvan, however, returned the items because of insufficient funds in the Home Oil account. Plaintiff Sinclair Oil alleges that defendant Sylvan State Bank failed to make a timely return of the debit items, either electronically or through another means by which they would be actually received by the Federal Reserve Bank of Kansas City no later than the Federal Reserve's cutoff hour of 2 p.m. on the banking day following Sylvan's receipt of the items (or the settlement date for the items.) This deadline for returning items is set by the Federal Reserve Operating Letter and NACHA Rules.

"Under Article IV of the Kansas Uniform Commercial Code, a payor bank may dishonor an item if it returns the item or sends written notice of dishonor before its 'midnight deadline,' or midnight on the next banking day following the banking day on which it receives the item. K.S.A. 84-4-301; 84-4-104(a)(10). Sylvan returned the debit items by regular mail rather than electronic mail in time to meet the 'midnight deadline,' but the items did not reach the Federal Reserve Bank of Kansas City by 2 p.m. on the banking day following Sylvan's receipt of the items and thus did not meet the deadline set by the Federal Reserve Operating Letter and NACHA Rules.

"Sinclair Oil brought this lawsuit on July 22, 1991, claiming that Sylvan's failure to return the debit items in a manner by which the Federal Reserve Bank in Kansas City would receive them by the deadline set by the Operating Letter and NACHA Rules makes Sylvan liable under K.S.A. 84-4-302 for the face amount of the items. Together, the debit items totaled $240,893.64.

## "II Summary of the Legal Issues Presented

"Under Article IV of the Kansas Uniform Commercial Code, agreements may be made to modify the provisions of Article IV. K.S.A. 84-4-103(a). Federal Reserve regulations and operating circulars, as well as clearing house rules 'have the effect of agreements . . ., whether or not specifically assented to by all parties interested in items handled.' K.S.A. 84-4-103(b). The parties in this case disagree as to the effect of National Automated Clearing House Rules and Operating Letter No. 12 of the

Federal Reserve Bank of Kansas City on Article IV's provision that an item received through a clearing house is returned 'when it is delivered to the presenting or last collecting bank or to the clearing house or is sent or delivered in accordance with its rules.' K.S.A. 84-4-301(d)(1).

"Specifically, plaintiff argues that the 1990 NACHA Rules (which were in effect at the time of the events relevant to this case) provide specific instructions governing the return of items in the amount of $2,500 or more which modify Article IV. The NACHA Rules provide that:

> 'Each returned debit entry in the amount of $2,500 or more shall be deposited with the RDFI's [receiving depository financial institution, here Sylvan] ACH in accordance with the deposit deadlines established by that ACH for night cycle processing, on the banking day following the banking day of receipt by the RDFI or following settlement date, whichever is later.'

## NACHA 1990 Operating Rules, § 5.1.2.

"Plaintiff contends that the use of the word 'deposit' means that the automated clearing house must have received a returned item by the midnight deadline. Plaintiff further contends that this interpretation of the word 'deposit' is appropriate when one considers that the word 'deposit' is used instead of the word 'send,' which is defined in the Operating Rules to mean 'to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transportation provided for and properly addressed.' 1990 NACHA Operating Rules, § 14.1.28.

"In support of its interpretation, plaintiff notes that Federal Reserve Operating Letter No. 12 also provides that:

> 'a receiver must return a debit item in an amount of $2,500.00 or more received from or through [the federal reserve bank] by returning the item in the manner provided in the applicable ACH rules by the special closing times for such return item set forth in the Reserve Bank's time schedule. The receiver is accountable for the amount of such an item if it is not received by the Reserve Bank by such special closing times.'

Operating Letter No. 12, ¶ 34.
Plaintiff notes that under the Operating Letter, the receiving bank will be held liable for the amount of the item if it is not received by the Reserve bank within the time period specified. Here, the deadline specified was 2 p.m. on the banking day following Sylvan's receipt of the items.

"Thus, according to plaintiff, Article IV, when read in conjunction with the pertinent provisions of the NACHA 1990 Operating Rules and Operating Letter No. 12 of the Federal Reserve Bank, requires that a reserve bank receive a return of a debit item of $2,500 or more by the reserve bank's special closing time for the banking day following the banking day of receipt by the receiving bank, or following settlement date, whichever is later. Pursuant to K.S.A. 84-4-302, plaintiff argues that if the reserve bank does not receive the item within the prescribed time frame, the receiving bank will be held accountable to the item's payee for the amount of the item.

Under the facts of the present case, then, defendant Sylvan would be liable to Plaintiff Sinclair for the face amount of each of the four debit items at issue.

"Defendant, on the other hand, argues that Sinclair can only recover against Sylvan if it can avail itself of the NACHA Rules or Federal Reserve Operating Letter No. 12 and prove a violation thereunder. If Sinclair is unable to avail itself of the NACHA Rules and Operating Letter, it can prove no violation of K.S.A. 84-4-302 itself because Sylvan did return the debit items by the 'midnight deadline' set forth in K.S.A. 84-4-104(a)(10). According to defendant, therefore, the primary issue in this case is whether Sinclair can use the NACHA Rules and Operating Letter No. 12 to its advantage. Sylvan asserts that Sinclair cannot use the NACHA Rules and Operating Letter No. 12 because they are only applicable to disputes between financial institutions and Sinclair is not a financial institution.

"The 1990 NACHA Rules define 'Originating Depository Financial Institution' (ODFI) as:

'[a] Participating Depository Financial Institution is an ODFI with respect to entries (1) it transmits directly or indirectly to its ACH for transmittal to a RDFI, and (2) on which it is designated as the ODFI . . .'

1990 NACHA Rules, § 14.1.17.
Further, the 1990 NACHA Rules define 'Participating Depository Financial Institution' as:

'a financial institution that (1) is authorized by law to accept deposits, (2) has been assigned a Transit Routing Number by the Rand McNally Corporation, and (3) has agreed to be bound by these rules as in effect from time to time. A Participating DFI of an Association is a Participating DFI which is a member of such Association or authorized by such Association to transmit entries and receive entries from an ACH. Only Participating DFIs may act as ODFIs or RDFIs.'

1990 NACHA Rules, § 14.1.19.
According to defendant, Sinclair, which is a corporation, fits into the definition category 'Organization.' 1990 NACHA Rules, § 14.1.15, or 'Originator,' 1990 NACHA Rules, § 14.1.18, but does not fall within any definition of a financial institution. The NACHA Rules only discuss settlement and accountability among participating financial institutions.

"Further, defendant contends that the Federal Reserve Operating Letter No. 12 relied upon by plaintiff is only applicable to depository institutions defined therein, and that Sinclair does not fit within the defined terms of the Operating Letter. Specifically, plaintiff does not fit within the definition of 'originator' as defined in Operating Letter No. 12, ¶ 3(t), 'receiver' as defined in Operating Letter No. 12, ¶ 3(x), or 'depository institution' as defined in Operating Letter No. 12, ¶ 3(k).

"Although Sinclair has argued that K.S.A. 84-4-103's provision for modification by agreement makes the NACHA Rules and Operating Letter applicable to the present dispute, defendant contends that the 1983 Kansas Comment to K.S.A. 84-4-103 suggests that operating letters, clearing house

rules, and the like are applicable only to disputes between financial institutions. The comment to K.S.A. 84-4-103 provides that:

'This is the important section which allows the rules of Article 4 to be varied by agreement, whether between bank and depositor (i.e. the signature card and deposit agreement) or among banks in the collection process (i.e. Federal Reserve operating circulars and clearing house rules).'

Defendant further contends that two Kansas Supreme Court cases also suggest that operating letters and clearing house rules are applicable only between banks. See *Chilson v. Capital Bank of Miami*, 237 Kan. 442, 447, 701 P.2d 903 (1985) (the Rules under Article 4 of the UCC may be varied by agreement, whether between bank and depositor or among banks in the collection process); *Citizens State Bank v. Martin*, 227 Kan. 580, 584, 609 P.2d 670 (1980) ('The Code . . . provides for variation of Article 4 by agreement, and thus recognizes the applicability of clearing house rules by which member banks are bound.').

"Defendant further notes that 10 Am. Jur. 2d Banks § 839, p. 808, states that 'the rules and usages of a clearing house are binding only on the clearing house and its members; they have no bearing on the rights and liabilities of third persons dealing with the constituent bank, or of third parties generally.'

"In the alternative, defendant argues that even if plaintiff is able to avail itself of the NACHA Rules and Operating Letter, plaintiff should still be unable to recover against the bank because the words 'deposit' and 'send' are synonymous as used in the NACHA Rules. Defendant argues that it fulfilled its obligations by 'depositing' the debits in the mail prior to its 'midnight deadline.'

"Finally, defendant argues that there is no law to support plaintiff's argument that 'accountable' as used in the Operating Letter means that the receiving bank will be liable to the payee of an item for the face amount of the item. Defendant argues that the Operating Letter indicates liability will be between banks in the collection process only.

"Defendant also notes that several courts have held that the correct measure of damages to a payee for a payor bank's failure to comply with a Federal Reserve operating letter requiring wire notice of dishonor would be damages from the bank's failure to exercise ordinary care in handling an item. See *Whalen & Sons Grain Co. v. Missouri Delta Bank*, 496 F. Supp. 211 (E.D. Mo. 1980); *Colorado Nat'l Bank v. First Nat'l Bank & Trust*, 459 F. Supp. 1366 (W.D. Mich. 1978); *Yeiser v. Bank of Adamsville* 614 S.W.2d 338 (Tenn. 1981); see also *Bank of Wyandotte v. Woodrow*, 394 F. Supp. 550 (W.D. Mo. 1975); Annotation, Payor Bank Accountability—Prompt Action, 22 A.L.R.4th 10. Under these cases, defendant argues that compliance with a Federal Reserve Operating Letter constitutes evidence of ordinary care, and a payee could only recover against the payor bank if it could show a reasonable chance of collection of the debits had the bank exercised that ordinary care. See also K.S.A. 84-4-103(e)."

The questions posed assume that Article 4 of the Kansas Uniform Commercial Code (UCC) applies to electronic fund transfers such as those between Sinclair and its bank and Home Oil and its bank. For the reasons set forth below, we conclude that Article 4 of the Kansas UCC does not apply to the transactions in question. The answer to the first question is, therefore, no. The answers to questions 2 and 3 are dependent upon an affirmative answer to question 1. We therefore do not answer questions 2 and 3.

The question whether the UCC applies to electronic fund transfers (EFTs) has not been addressed in Kansas. Other jurisdictions dealing with this same question have concluded, however, that the UCC does not apply. *Bradford Trust Co. v. Tex.-American Bank-Houston*, 790 F.2d 407, 409 (5th Cir. 1986); *Evra Corp. v. Swiss Bank Corp.*, 673 F.2d 951, 955 (7th Cir 1982); *Delbrueck & Co. v. Mfrs. Hanover Trust Co.*, 609 F.2d 1047, 1051 (2d Cir. 1979); *Walker v. Texas Commerce Bank, N.A.*, 635 F. Supp. 678, 681 (S.D. Tex. 1986); *Weeks Office Products, Inc. v. Chemical Bank*, 180 App. Div. 2d 419, 579 N.Y.S.2d 86 (1992). See also *Gatoil, Inc. v. Forest Hill State Bank*, 1 UCC Rptg. Serv. 2d 171, 182 (D. Md. 1986) (noting that two circuits have held Article 4 does not apply to EFTs but that even if it did apply the result would be the same). With the exception of courts that have applied the UCC by way of analogy, our research has not disclosed a single case that has found that the UCC applies to EFTs.

Numerous commentators also have concluded that the UCC does not apply to EFTs. Vergari and Shue, Checks, Payments, and Electronic Banking, p. 495 (1986) (applying Article 4 will raise as many questions as it answers); Felsenfeld, Legal Aspects of Electronic Transfer of Funds, pp. 130, 135 (1988) (every major court decision has held that Article 4 does not apply to EFT controversies); 1 White & Summers, Uniform Commercial Code, pp. 810-11 (3d ed. 1988) (most courts that have addressed the issue have determined that the UCC was not designed to handle problems arising from EFTs and have not applied the UCC to such controversies).

The substantive rationales that courts have expressed for excluding EFTs from UCC coverage include: (1) electronic debits are not "items" within the meaning of Article 4, *Gatoil, Inc.*, 1 UCC Rptg. Serv. at 182; (2) the UCC "does not specifically address the problems of electronic fund transfers," *Delbrueck & Co.*, 609 F.2d at 1051; and (3) the UCC drafters never contemplated electronic transactions when developing the Code, *Evra Corp.*, 673 F.2d 951, 955.

We conclude that Article 4 of the Kansas UCC does not cover electronic fund transfer debit transactions such as are involved in the questions submitted. First, EFTs do not appear to be "items" within the meaning of the Kansas UCC. Article 4 of the Kansas UCC applies only to "items," which are to be writings. The pertinent UCC provisions all apply to "items." K.S.A. 84-4-213 (final payment of an item by payor bank); K.S.A. 84-4-301 (recovery of payment by return of items; dishonor of items); and K.S.A. 84-4-302 (payor bank's responsibility for late return of items). The UCC defined "item" as "any instrument for the payment of money even though it is not negotiable but does not include money." K.S.A. 84-4-104(1). Article 4 now incorporates the K.S.A. 1993 Supp. 84-3-104 definition of "instrument," K.S.A. 1993 Supp. 84-4-104(c), but did not specifically incorporate that definition in 1990. As we consider the definition of "instrument," it appears to include only writings. "Instrument" was defined as "negotiable instrument." K.S.A. 84-3-102(1)(e). "Negotiable instrument," in turn, was defined as "any writing" that was signed by the maker, containing an unconditional promise to pay a sum certain payable on demand or at a definite time to order or to bearer. K.S.A. 84-3-104. The 1990 statute went on to identify the writings that complied with the section to include drafts, checks, certificates of deposit, and notes. An EFT is not a writing and is not within the specific list of writings that are "instruments." In the absence of legislative action, we conclude that an EFT is not an "item" within the meaning of Article 4.

Second, in an attempt to adopt a·comprehensive body of law that defines the rights and obligations that arise from wire transfers, the Kansas Legislature recently adopted Article 4A of the UCC. L. 1990, ch. 367, codified at K.S.A. 1993 Supp. 84-4a-101 *et seq.* However, Article 4A applies to "credit transfers," not

"debit transfers." Transfers are divided into two categories determined by whether the instruction to pay is given by the person making payment or the person receiving payment. If the instruction is given by the person making the payment, the transfer is commonly referred to as a "credit transfer." If the instruction is given by the person receiving payment as it was in this case, the transfer is commonly referred to as a "debit transfer." Thus, even this most recent enactment would not apply to the transactions, not only because it was enacted after the date of these transactions but also because Article 4A specifically excludes debit transfers.

White and Summers point out that the very nature of debit transfers, even by analogy, makes application of Article 4 troublesome:

"[T]he typical electronic fund transfer is backwards when compared with the typical paper order via check. In a check transaction the drawer draws the check, gives it to the payee, who passes it to the collecting bank and thence to the payor. In electronic fund transfers, the drawer deals first with the drawee/payor and only then does the message go to some intermediary . . . and finally to the payee. In the EFT case, the agent . . . follows the payor—comes between the payor and payee. In the check case the payor is at the end of the transaction and has the last chance to determine whether to pay." 1 White & Summers, Uniform Commercial Code, p. 811.

Carl Felsenfeld in Legal Aspects of Electronic Funds Transfers, p. 130, notes:

"Courts have used Article 4 of the UCC to suggest analogies that can lead to an appropriate EFT case law position. But so far, every major court decision has held that the rights and liabilities of parties to wire transfer transactions were not governed by Article 4. The rulings derived from the courts' belief that electronic fund transfers were not in the contemplation of the Article 4 drafters. The belief is unquestionably correct. Article 4 is a direct outgrowth of the American Bankers Association Bank Collection Code, drafted in the early 1920s to govern check collection."

The ideas in Articles 3 and 4 of the UCC, as pointed out by White and Summers, depend upon bankers looking at particular words and numerals on the face of a particular instrument. In the case of EFTs, the medium of communication is the computer and the computer message. 1 White & Summers, Uniform Commercial Code, p. 811.

The argument is made that in Kansas we have previously determined in *Citizens State Bank v. Martin*, 227 Kan. 580, 584-

86, 609 P.2d 670 (1980), that Article 4 of the Uniform Commercial Code, K.S.A. 84-4-101 *et seq.*, governs bank deposits and collections. According to the argument, Citizens supports the contention that the UCC, through K.S.A. 1993 Supp. 84-4-103, calls for the application of the National Automated Clearing House Association (NACHA) Rules and Operating Letter No. 12 of the Federal Reserve Bank of Kansas City to the presentment and return of automated clearing house items in this case. Our holding in *Citizens*, sound as it may be, has no application to the transactions involved in the certified questions to this court.

Finally, an argument is made that the NACHA Rules incorporate the provisions of Article 4 of the Kansas UCC and therefore Article 4 applies to the transactions in question. If the NACHA rules apply, the resolution of the controversy is for the federal court. The questions presented to this court do not permit us to answer this contention.