**SINCLAIR OIL CORPORATION,**
**Plaintiff,**

v.

**SYLVAN STATE BANK, Defendant.**

**Civ. A. No. 91–2270–GTV.**

United States District Court,
D. Kansas.

July 20, 1995.

---

Charles E. Fowler, III, F. Allen Speck, McDowell, Rice & Smith, P.C., Catherine A. Donnelly, Vleisides, Donnelly & O'Leary, Kansas City, MO, for Sinclair Oil Corp.

Charles E. Fowler, III, F. Allen Speck, McDowell, Rice & Smith, P.C., Kansas City, MO, for Zions First Nat. Bank.

Thomas A. Hamill, Benjamin S. Tschudy, Perry, Hamill & Fillmore, Overland Park, KS, for Sylvan State Bank.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This matter is before the court on the following motions:

Plaintiff Sinclair Oil Corporation's Motion for Partial Summary Judgment (Doc. 57);

Defendant Sylvan State Bank's Cross Motion for Judgment on the Pleadings (Doc. 94);

Defendant Sylvan State Bank's Motion for Summary Judgment (Doc. 103);

Plaintiff Sinclair Oil Corporation's Motion to Strike Defendant's Cross Motion for Judgment on the Pleadings (Doc. 107); and

Plaintiff Sinclair Oil Corporation's Motion for Leave to Take Deposition (Doc. 116).

On January 20, 1995, the court ruled that it would treat defendant's motion for judgment on the pleadings as a motion for summary judgment and allowed the parties additional time to supplement their briefs. (Doc.

101). In response, Defendant Sylvan State Bank filed a motion for summary judgment (Doc. 103). Plaintiff Sinclair Oil filed a motion to strike defendant's cross motion for judgment on the pleadings (Doc. 107).

The court has thoroughly reviewed the record and the numerous briefs submitted by the parties and is now prepared to rule. For the reasons set forth below, plaintiff's motion for partial summary judgment is denied; defendant's motions for judgment on the pleadings and for summary judgment are denied; plaintiff's motion to strike is denied; plaintiff's motion for leave to take deposition is granted.

## I. BACKGROUND

The court considers the above-listed motions following the Kansas Supreme Court's answer to the court's certification of three questions of Kansas Law pursuant to K.S.A. 60–3201 et seq. (Doc. 88). The following facts are relevant to the court's resolution of the motions.

This diversity jurisdiction case concerns the allegedly untimely return of four electronic debit items from a payor bank (defendant) to the initiating party (plaintiff). Plaintiff Sinclair Oil Corporation (Sinclair) is a Wyoming corporation which maintained a business relationship with Home Oil Company (Home Oil), a Kansas distributor of its products. Sinclair was in the practice of making electronic debits through its bank, Zions First National Bank (Zions), to Home Oil's account at defendant Sylvan State Bank (Sylvan) for invoices due for products delivered to Home Oil.

From July 20, 1990 through July 27, 1990, Sinclair electronically debited Home Oil's account at Sylvan State Bank four times, totalling $240,893.64. Sylvan, however, returned the items because of insufficient funds in the Home Oil account. Plaintiff Sinclair Oil alleges that defendant Sylvan State Bank failed to make a timely return of the debit items, either electronically or through another means by which they would be actually received by the Federal Reserve Bank of Kansas City no later than the Federal Reserve's cutoff hour of 2 p.m. on the banking day following Sylvan's receipt of the items

(or the settlement date for the items). This deadline for returning items is set by the Federal Reserve Operating Letter No. 12 (Operating Letter) and the National Automated Clearing House Association (NACHA) Rules.

Plaintiff argued that the Operating Letter and the NACHA Rules applied under Article IV of the Kansas Uniform Commercial Code, K.S.A. 84–4–103(a), which provides that the parties can vary the provisions of the code by agreement. Federal Reserve regulations and operating circulars, as well as clearing house rules "have the effect of agreements ..., whether or not specifically assented to by all parties interested in items handled." K.S.A. 84–4–103(b).

Defendant argued that under Article IV of the Kansas Uniform Commercial Code, a payor bank may dishonor an item if it returns the item or sends written notice of dishonor before its "midnight deadline," or midnight on the next banking day following the banking day on which it receives the item. K.S.A. 84–4–301; 84–4–104(a)(10). Sylvan returned the debit items by regular mail rather than electronic mail in time to meet the "midnight deadline," but the items did not reach the Federal Reserve Bank of Kansas City by 2 p.m. on the banking day following Sylvan's receipt of the items. Thus, the returns did not meet the deadline set by the Federal Reserve Operating Letter and NACHA Rules.

Sinclair Oil brought this lawsuit on July 22, 1991, claiming that Sylvan's failure to return the debit items in a manner by which the Federal Reserve Bank in Kansas City would receive them by the deadline set by the Operating Letter and NACHA Rules makes Sylvan liable for the face amount of the items.

Specifically, plaintiff argues that the 1990 NACHA Rules (which were in effect at the time of the events relevant to this case) provide specific instructions governing the return of items in the amount of $2,500 or more which modify Article IV of the UCC. The NACHA Rules provide that:

> Each returned debit entry in the amount of $2,500 or more shall be deposited with

the RDFI's [1] ACH in accordance with the deposit deadlines established by that ACH for night cycle processing, on the banking day following the banking day of receipt by the RDFI or following settlement date, whichever is later.

NACHA 1990 Operating Rules, § 5.1.2.

Plaintiff contends that the use of the word "deposit" means that the automated clearing house must have *received* a returned item by the midnight deadline. Plaintiff further contends that this interpretation of the word "deposit" is appropriate when one considers that the word "deposit" is used instead of the word "send," which is defined in the Operating Rules to mean "to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transportation provided for and properly addressed." 1990 NACHA Operating Rules, § 14.1.28.

In support of its interpretation, plaintiff notes that Federal Reserve Operating Letter No. 12 also provides that:

a receiver must return a debit item in an amount of $2,500.00 or more received from or through [the federal reserve bank] by returning the item in the manner provided in the applicable ACH rules by the special closing times for such return item set forth in the Reserve Bank's time schedule. The receiver is accountable for the amount of such an item if it is not received by the Reserve Bank by such special closing times.

Operating Letter No. 12, ¶ 34.

Plaintiff notes that under the Operating Letter, the receiving bank will be held liable for the amount of the item if it is not *received* by the Reserve bank within the time period specified. Here, the deadline specified was 2 p.m. on the banking day following Sylvan's receipt of the items.

Thus, according to plaintiff, Article IV, when read in conjunction with the pertinent provisions of the NACHA 1990 Operating Rules and Operating Letter No. 12 of the Federal Reserve Bank, requires that a re-serve bank receive a return of a debit item of $2,500 or more by the reserve bank's special closing time for the banking day following the banking day of receipt by the receiving bank, or following settlement date, whichever is later.

Defendant, on the other hand, argues that Sinclair can only recover against Sylvan if it can avail itself of the NACHA Rules or Federal Reserve Operating Letter No. 12 and prove a violation thereunder. If Sinclair is unable to avail itself of the NACHA Rules and Operating Letter, it can prove no violation of K.S.A. 84–4–302 itself because Sylvan did return the debit items by the "midnight deadline" set forth in K.S.A. 84–4–104(a)(10). According to defendant, therefore, the primary issue in this case is whether Sinclair can use the NACHA Rules and Operating Letter No. 12 to its advantage. Sylvan asserts that Sinclair cannot use the NACHA Rules and Operating Letter No. 12 because they are only applicable to disputes between financial institutions and Sinclair is not a financial institution.

In response to the arguments made regarding Kansas law, the court certified the following questions to the Kansas Supreme Court:

(1) Where electronic debit items are involved, do the National Automated Clearing House Rules ("NACHA Rules") and Operating Letter No. 12 of the Federal Reserve Bank of Kansas City ("Operating Letter") modify the provisions of Article IV of the Kansas Uniform Commercial Code as they relate to the presentment and return of automated clearing house ("ACH") items?

(2) If so, are the NACHA Rules and Operating Letter applicable to a dispute between a bank that receives an ACH debit item and the party initiating that item where the initiating party is not a financial institution and is not a party to the NACHA Rules or Operating Letter?

Operating Rules, § 14.1.27.

---

1. An RDFI is the receiving depository financial institution, in this case, Sylvan. NACHA 1990

(3) If the NACHA Rules and Operating Letter are applicable to a dispute between these parties, is the measure of damages the face amount of the debit item under K.S.A. 84–4–302(a), or the actual damages directly attributable to the late return of the item under K.S.A. 84–4–103(e)?

The Kansas Supreme Court answered the above questions in part in *Sinclair Oil Corporation v. Sylvan State Bank*, 254 Kan. 836, 869 P.2d 675 (1994). The Supreme Court held that Article IV of the Kansas Uniform Commercial Code does not apply to electronic fund transfer (EFT) debit transactions and declined to answer questions 2 and 3 based on its answer to question 1.

## II. PROCEDURAL ISSUES

Before addressing the merits of the summary judgment motions, the court must first resolve numerous procedural objections that the parties have raised. As a reference, the court provides the following chronology regarding the motions now pending before the court:

06/08/92 Plaintiff's motion for partial summary judgment (Doc. 57);

07/10/92 Defendant's response to plaintiff's motion for partial summary judgment (Doc. 63);

07/24/92 Plaintiff's reply in support of the motion for partial summary judgment (Doc. 66);

08/04/92 Defendant's sur reply to plaintiff's reply (Doc. 74);

08/13/92 Plaintiff's reply to defendant's sur reply (Doc. 77);

04/23/93 Questions certified to the Kansas Supreme Court (Doc. 88);

03/04/94 Kansas Supreme Court response to the certified questions in *Sinclair Oil Corp. v. Sylvan State Bank*, 254 Kan. 836, 869 P.2d 675 (1994).

04/01/94 Letter to counsel allowing additional briefing regarding the Kansas Supreme Court's response.

05/06/94 Defendant's supplemental response to plaintiff's motion for partial summary judgment (Doc. 91);

05/06/94 Plaintiff's post certified question brief (Doc. 93);

05/31/94 Defendant's response to plaintiff's post certified question brief and cross motion for judgment on the pleadings (Doc. 94);

07/01/94 Plaintiff's response to defendant's cross motion for judgment on the pleadings and reply to defendant's response to plaintiff's post certified question brief (Doc. 97);

07/25/94 Defendant's reply in support of defendant's cross motion for judgment on the pleadings (Doc. 100);

01/20/95 Order issued notifying parties of court's decision to treat the cross motion for judgment on the pleadings as a motion for summary judgment and allowing parties to supplement their submissions regarding the motion (Doc. 101);

02/13/95 Defendant's motion for summary judgment (Doc. 103);

02/14/95 Plaintiff's supplemental brief in opposition to defendant's cross motion for judgment on the pleadings and motion to strike the cross motion (Doc. 107);

02/23/95 Plaintiff's response to defendant's motion for summary judgment (Doc. 108);

02/24/95 Defendant's response to plaintiff's supplemental brief in opposition to defendant's cross motion and motion to strike (Doc. 109);

03/06/95 Defendant's reply in support of defendant's motion for summary judgment (Doc. 110);

03/08/95 Plaintiff's reply in support of motion to strike defendant's cross motion for judgment on the pleadings (Doc. 111).

First, plaintiff objects to the filing of defendant's cross motion for judgment on the pleadings (Doc. 94) after the time provided in the pretrial order. Following the Kansas Supreme Court's decision, this court allowed the parties to file additional briefs in response to the Supreme Court's answer to the certified questions. Both parties filed additional briefs supplementing their arguments regarding plaintiff's partial summary judgment motion. Defendant filed a motion for judgment on the pleadings. Plaintiff argues that according to the pretrial order (Doc. 73),

any dispositive motions were to be filed on or before June 8, 1992. Defendant filed its cross motion for judgment on the pleadings on May 31, 1994. The court finds that the deadline contained in the pretrial order for filing dispositive motions was set aside by the certification of questions to the Kansas Supreme Court and the subsequent letter allowing additional briefing following the Kansas Supreme Court's response. Plaintiff's motion to strike defendant's cross motion for judgment on the pleadings (Doc. 107) is denied.

Second, plaintiff objects to the filing of defendant's motion for summary judgment (Doc. 103) in response to the court's decision to treat defendant's cross motion for judgment on the pleadings as a motion for summary judgment. The court finds that the filing of defendant's motion for summary judgment was not inappropriate and it will consider the arguments in the summary judgment motion in addition to those made in the cross motion for judgment on the pleadings. Plaintiff has been given ample opportunity to respond to both motions.

Finally, defendant objects to many arguments made by plaintiff because they are not reflected in the pretrial order. The court concludes that the arguments of both parties have evolved substantially since the filing of the pretrial order. The above list of briefing reflects the opportunity of both parties to fully present their arguments and respond to the opposing party's arguments. The court finds that although the arguments have shifted, the general theory of recovery has remained the same and is reflected in the pretrial order. The court, therefore, declines to strike any of the arguments made to date.

The court is now prepared to consider the substantive issues raised by the parties in their motions.

### III. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

### IV. DISCUSSION

The Kansas Supreme Court's response to the certified questions left an important issue remaining in the case: Can Sinclair recover from Sylvan State Bank for not meeting the return deadlines contained in the Operating Letter and the NACHA Rules? In other words, since Sinclair can no longer claim that the Kansas Commercial Code K.S.A. 84-4–103 incorporated the Operating Letter and the NACHA Rule, is there any other way that Sinclair can enforce the deadline provisions against Sylvan State Bank and recover damages for the delay?

Plaintiff continues to argue that because Sylvan failed to return the debit items in accordance with the return requirements of the Operating Letter and the NACHA rules, Sylvan is liable to plaintiff for the face

amount of the debits. Plaintiff argues that it is a member of the "agreement for electronic presentment," or in the alternative, argues that it is a third party beneficiary entitled to enforce and recover under the NACHA rules.

Because the Kansas Supreme Court has held that Article IV of the Kansas UCC does not apply to electronic debit items, plaintiff does not claim any statutory authority governing defendant's return of the electronic debit items. The only remaining legal structure that plaintiff seeks to enforce consists of the Federal Reserve Operating Letters and the NACHA rules. The question remains whether plaintiff can enforce the provisions of these rules and hold defendant strictly liable for its failure to comply with the rules.

*Operating Letters*

The Federal Reserve Act authorizes the Board of Governors of the Federal Reserve System to issue regulations governing the transfer of funds and permits Federal Reserve Banks to act as clearinghouses for depository institutions. 12 U.S.C. § 248(*o*). Federal Reserve Operating Letters (or Circulars) are authorized by the Board regulations and concern the "operating details" of the banks. Regulation J, 12 C.F.R. § 210.3 (1993); K.S.A. 84–1–103 Official UCC Cmt. 3. The Operating Letters govern the rights and duties of depository institutions and the reserve banks and are contractual in nature. *See United States Fidelity and Guaranty Co. v. Federal Reserve Bank,* 590 F.Supp. 486, 492 (S.D.N.Y.1984), *aff'd,* 786 F.2d 77 (2d Cir.1986).

The Federal Reserve Bank in Kansas City issued Operating Letter No. 12 (Operating Letter), and it controls the electronic debits in this case. The Operating Letter provides, in part, as follows:

> This Operating Letter and our deposit schedule govern the clearing and settlement of automated clearing house (ACH) items by this Bank. This Letter is issued pursuant to Sections 4, 11A, 13, 16 and 19 of the Federal Reserve Act and related statutes. It is binding on originators, receivers, and other parties interested in an item and on each account holder agreeing to settle for items under this Letter. This

> Letter preempts or supersedes agreements or other arrangements among parties to automated clearing house items only to the extent that the provisions of those arrangements are inconsistent with the provisions of this Operating Letter.

Operating Letter No. 12, ¶ 1. The Operating Letter incorporates applicable automated clearing house (ACH) rules, which in this case are the NACHA rules. Operating Letter No. 12, ¶ 4(a).

Sinclair argues that it is covered under the scope of the Operating Letter which states that the letter is "binding on originators, receivers, and other parties interested in an item and on each account holder agreeing to settle for items under this Letter." Sinclair claims to be a party interested in an item, arguing that the letter is not limited to financial institutions, but extends to payors and payees as well who are interested in items processed through the Federal Reserve System.

The terms originators, receivers, and account holders are defined in the Operating Letter. An "originator" means a depository institution, whether or not a member of an ACH associations, that sends an ACH item to a Reserve Bank. Operating Letter ¶ 3(t). A "receiver" means a depository institution or other authorized institution, whether or not a member of an ACH association, that is designated in an item to receive the item from a Reserve Bank. *Id.* ¶ 3(x). An "account holder" means a Reserve Bank, a depository institution, or other institution maintaining an account with a Reserve Bank. *Id.* 3(a). As applied to the transactions in this case, Zions Bank was the originator and Sylvan State Bank was the receiver.

Sinclair does not fall within any of the above definitions, but instead claims to be an "other interested party." Although "other interested party" is not defined in the Letter, its meaning can be determined by its use in other parts of the Operating Letter. The originators agreement and the receivers agreement contained in the Operating Letter refer to "other interested parties." The receivers agreement (which contains parallel

language to the originators agreement) provides in pertinent part:

> 29. By maintaining or using an account with a Reserve Bank for settlement of credit and debit items and by accepting an item from this Bank, a receiver designated in an item:
>
>> a) agrees to comply with the applicable ACH rules and agrees that such rules shall govern the relationships between the originator, the receiver, and the other parties interested in the item and covered by the applicable ACH rules.

The operating letter agreement applies to Sinclair only if it is an "other party interested in the item *and* covered by the applicable ACH rules." Thus, in order for Sinclair to enforce the Operating Letter rules, it must be a member of the contractual agreement under the NACHA rules.

*The NACHA Rules*

Sinclair makes two arguments that it is a party to the contractual relationship under the NACHA Rules and entitled to enforce the rules and the Operating Letter against Sylvan State Bank. First, Sinclair argues that it is bound to the NACHA Rules under Section 2.2.1.3 of the Rules because Sinclair's bank (Zions) as the originating depository institution warrants that all requirements of the NACHA Rules were met. Sinclair argues that when Zions submitted these electronic debits into the system, Zions (as the agent of Sinclair) warranted that an agreement between Zions and Sinclair existed. Additionally, Sinclair argues that the rules do not require a formal written agreement. In the latest round of briefing in this case, Sinclair submits the affidavits of Charles E. Barlow, the Treasurer and Chief Financial Officer of Sinclair Oil Corporation, and Jack L. Hoffman, Vice President and the Manager of the Cash Management Department of Zions First National Bank. Mr. Barlow and Mr. Hoffman state in their affidavits that there was an agreement between Sinclair and Zions to be bound by all the Automated Clearing House (ACH) Rules. Mr. Hoffman states that he recalls a written agreement, but that Zions has been unable to locate such

a document. Mr. Barlow recalls an oral agreement.

Second, plaintiff argues that it is a third party beneficiary of Sylvan's contract to handle items in accordance with the NACHA Rules. Essentially, plaintiff asserts that banks agree to the NACHA Rules for handling electronic debit items for the benefit of the banking customers, payors, and payees (such as Sinclair).

The NACHA rules designate the parties to the electronic funds debit transactions in this case as follows: Sinclair is the "Originator"; Zions is the "Originating Depository Financial Institution" (ODFI); the Federal Reserve Bank of Kansas City is the "Automated Clearing House" (ACH); Sylvan is the "Receiving Depository Financial Institution" (RDFI); and Home Oil is the "Receiver."

The provisions of Article 2 of the NACHA rules provide as follows:

> 2.1 *Prerequisites to Origination*—Prior to the initiation of the first credit or debit entry by an Originator to a Receiver's account with an RDFI or to a Receiver, the following shall have occurred:
>
>> 2.1.1 *Originator Authorization and Agreement*—Such Originator shall have authorized the ODFI to transmit one or more such entries to such account ... and .. shall have entered into an agreement with such ODFI under the terms of which such Originator shall have agreed to be bound by these rules as in effect from time to time.

"The operating rules of NACHA and its member associations operate as agreements among those depository institutions that are members of those associations.... These rules also require that agreements between participating depository institutions and their commercial customers provide that those customers agree to be bound by those rules." Donald I. Baker & Roland E. Brandel, The Law of Electronic Fund Transfer Systems ¶ 3.04[1] (2d Ed.1988). In order to enforce the contractual agreements of the NACHA rules and the Operating Letter, Sinclair must show that it is a contracting party to the

rules or that it is an intended third party beneficiary of the contract.

Sinclair has not produced a written agreement between it and Zions, but through two affidavits contends that either an oral or written agreement existed at the time it initiated the electronic debit. After more than one year of briefing following the Kansas Supreme Court's response to the certified question, it now appears that the parties have created a genuine issue of fact that can only be resolved at trial. Whether Sinclair entered an agreement as required by the NACHA rules § 2.1.1 remains an issue of fact in the case.

 Finally, the court does not believe that Sinclair can avoid the agreement requirement by claiming third party beneficiary status. In order for a third party to enforce a contract entered into between two other parties, the third party must show that the contract was entered into for his benefit. *Cornwell v. Jespersen,* 238 Kan. 110, 115, 708 P.2d 515, 520 (1985). "[A] beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract." *Id.* "Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract." *Id.* at 115–16, 708 P.2d 515. An "incidental beneficiary" cannot enforce a contract as a third party beneficiary. A person is an incidental beneficiary if the benefits accruing to him are merely incidental to the performance of the contract. *Id.*

 It does not appear that the NACHA rules were written for the benefit of customers. Sinclair has not pointed to any language in the rules the shows an expression of intent to benefit a third party to the NACHA rules. The rules govern the responsibilities and liabilities between banks and cannot be said to be for the mere benefit of non-contracting parties using the electronic payment systems. In fact, the rules themselves require an originator to enter an agreement prior to the initiation of a debit item. NACHA Rules ¶ 2.1.1. Any benefit derived by a non-contracting parties is merely incidental. Sinclair has not convinced the court that it is a third party beneficiary of the NACHA rules. The issue remains for trial whether Sinclair is an actual contracting party to the NACHA rules.

*Motion for Leave to Take Deposition*

Given the factual issues remaining to be resolved at trial, the court grants plaintiff Sinclair's motion for leave to take the deposition of Jack L. Hoffman by telephone. This telephone deposition shall take place without delay and at a time agreed upon by all parties.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for partial summary judgment (Doc. 57) is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Doc. 94) is denied.

IT IS FURTHER ORDERED that defendant Sylvan State Bank's motion for summary judgment (Doc. 103) is denied.

IT IS FURTHER ORDERED that plaintiff Sinclair Oil Corporation's motion to strike defendant's cross motion for judgment on the pleadings (Doc. 107) is denied.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to take deposition of Jack L. Hoffman by telephone (Doc. 116) is granted.

IT IS FURTHER ORDERED that this case shall proceed to trial. A pretrial conference shall be held on August 25, 1995, at 1:30 p.m. In light of the evolution of the arguments since the original pretrial order was entered on July 30, 1992, the parties are ordered to submit supplements to their statements of factual contentions and legal theories to be included in a revised pretrial order. The parties shall provide these supplements to the court prior to the pretrial conference.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**